**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 2:10-cr-00565-PMP-PAL |
| ) Plaintiff, ) | **ORDER** |
| ) vs. ) | (Mtn to Reveal - Dkt. #84) |
| ) NICHOLAS BICKLE, ) | |
| ) Defendant. ) | |

This matter is before the court on Defendant Nicholas Bickle's ("Bickle") Motion to Reveal Identity of Confidential Informants and Undercover Agents (Dkt. #84). The court has considered the Motion, the government's Response (Dkt. #86), and Defendant's Reply (Dkt. #88).

**BACKGROUND**

Bickle was charged, along with two co-Defendants, Andrew Kaufman and Richard Paul, in a single-count Complaint (Dkt. #2) on October 29, 2010, with conspiracy in violation of 18 U.S.C. § 371. Subsequently, an Indictment (Dkt. #21) and a Superseding Indictment (Dkt. #49) were returned on November 23, 2010, and December 14, 2010, respectively. The Superseding Indictment charged all the Defendants with conspiracy and thirteen various firearms offenses. Each of the charging documents (Dkt. ##2, 21, 49) refers to two confidential informants. Since the Motion to Reveal was filed, the government has disclosed the name of one of the informants–Omar Aguirre–to Bickle, as well as the names of the undercover Alcohol, Tobacco, Firearms and Explosives ("ATF") agents, and impeachment information regarding Omar Aguirre, but it has not disclosed the identity or whereabouts of "Co-Conspirator A" (the "CI").

///

///

# DISCUSSION

I. **The Parties' Positions.**

    A. **Defendant's Motion to Reveal (Dkt. #84).**

The Motion requests that the court direct the government to disclose the identity and whereabouts of the CI so Bickle can interview the CI, or alternatively, to conduct an *in camera* hearing to "allow defense counsel to participate to determine whether the [CI's] testimony is helpful and material to the defense." Bickle represents that the CI is currently facing felony charges in Nevada, is an admitted narcotics trafficker and addict, who also admitted to shooting someone who attempted to rob him of either firearms or narcotics in his residence. Bickle also asserts discovery provided to him by the government establishes the CI is untruthful, as documented by ATF agents in their own reports. The Motion requests the court conduct an *in camera* hearing and require the government reveal the identity and location of the CI in order for Bickle to prepare his defense. Bickle asserts the CI in this case was a percipient witness who arranged and participated in the firearms transactions alleged in the Superseding Indictment and that he or she may have information relevant to issues of entrapment. Bickle claims the CI's testimony is "vital" even if the government does not call him as a witness because the defense may subpoena the CI to testify in its case-in-chief. Bickle contends the government must produce the CI prior to trial for defense counsel to interview. Finally, Bickle argues he is entitled to impeachment information about the CI in order to prepare for cross-examination of the CI at trial or sentencing.

    B. **Government's Response (Dkt. #86).**

The government asserts that it has provided all of the information Bickle requested except for the identity of the CI. Bickle has not shown a sufficient interest in disclosure to overcome the government's interest in nondisclosure of the CI's identity. Specifically, the government notes that the CI had limited involvement in Bickle's alleged criminal activity, he or she was not the only percipient witness to any critical event, the CI's testimony will not aid Bickle in his entrapment defense, and Bickle has not enunciated more than a mere suspicion that the informant's testimony would be relevant to any defense. The government asserts that it has a substantial interest in protecting the CI's identity to prevent harm to the CI so that he or she can be used in future investigations and so that subsequent

informants freely come forward. Specifically, the government argues that Bickle threatened Aguirre when Bickle said, "If you ever f*** me, you know who we are. We're the government, we'll catch you." The government asserts that this threat would cause any CI to reasonably fear for his or her safety. Finally, the government contends that any testimony the CI could provide about Aguirre's firearms trafficking enterprise or Defendant's lack of involvement could be provided by Aguirre himself or ATF agents, and the CI's testimony would be cumulative and/or unhelpful.

The government states that in June 2010, ATF agents learned from the CI that Aguirre illegally sold and possessed firearms. On June 22, 2010, and June 28, 2010, ATF agents arranged to purchase firearms and magazines from Aguirre through the CI. ATF agents purchased the firearms on June 22, 2010, and the magazines on June 29, 2010. The government represents the CI had no further involvement with the case after June 29, 2010. After these two transactions, ATF agents purchased several firearms directly through Aguirre on multiple occasions. Aguirre told the ATF agents about a friend who had access to machine guns from "the military in the Middle East" and arranged firearms purchases from Defendant Paul and Defendant Kaufman.

**C.  Defendant's Reply (Dkt. #88).**

Bickle concedes that the informant had no direct contact with him, but he asserts this fact is relevant and helpful because the CI will be able to testify about Aguirre's narcotics and firearms trafficking activities and will confirm that Defendant is not part of Aguirre's "criminal enterprise." Bickle asserts no other witnesses will be able to provide this testimony. Although Bickle states that "[t]he government's case will be based largely on the testimony of . . . Omar Aguirre," he argues that he is entitled to identifying information about the CI who brought Aguirre to the ATF agents' attention. Bickle also maintains that he made no threat against Aguirre or any other informant or undercover officer, and the government's own evidence shows that Bickle was not present when the alleged threat was made. Thus, he is not a threat to the safety of the CI, and the court should not withhold disclosure of the CI's identity on that basis.

**II.  Law and Analysis.**

As a general matter, the government must turn over material evidence favorable to a defendant. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). However, the government holds a limited privilege to

3

1   conceal the identity of an informant.   *Roviaro v. U.S.* 353 U.S. 53, 59 (1957).  What is usually referred

2   to as the informer's privilege is in reality the government's privilege to withhold from disclosure the

3   identity of persons who furnish information of violations of law to officers charged with enforcement of

4   that law." *Roviaro,* 353 U.S. at 59 (*citing Scher v. U.S.*, 305 U.S. 251, 254 (1938)).

> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.  The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

*Id*.  There are several limits on the scope of the privilege.  "[W]here disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." *Id*. at 60.  "Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." *Id*.

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness.  Where the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.

*Id*. at 60-61.

Thus, "[t]o obtain disclosure, a defendant must show a need for the information, and in doing so, must show more than a 'mere suspicion' that the informant has information which will prove 'relevant and helpful' to his defense, or that will be essential to a fair trial." *U.S. v. Henderson*, 241 F.3d 638, 645 (9th Cir. 2001).  "Balancing the defendant's and the government's interest, a district court must hold an *in camera* hearing whenever the defendant makes a minimal threshold showing that disclosure would be relevant to at least one defense." *Id.* (*citing U.S. v. Spires*, 3 F.3d 1234, 1238 (9th Cir. 1993)) (internal quotations omitted).

In ruling on disclosure requests,

> a trial court must balance (1) the extent to which disclosure would be relevant and helpful to the defendant's case, and (2) the government interest in protecting the identity of a particular informant.  In doing so the court must consider the public interest in protecting the flow of information against the individual's right to prepare his defense.

*Id*.

/ / /

"Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defense, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62. In the Ninth Circuit, the "district judge's striking of the appropriate balance is reviewed for an abuse of discretion," and "the judge's determination whether a defendant has made a sufficient showing to justify an *in camera* hearing on disclosure under the same standard." *Spires*, 3 F.3d at 1238 (*citing U.S. v. Sai Keung Wong*, 886 F.2d 252, 255 (9th Cir. 1989)); *U.S. v. Fixen*, 780 F.2d 1434, 1440 (9th Cir. 1986)).

In *Roviaro*, the Supreme Court held that the district court had committed prejudicial error by refusing to compel the government to disclose the identity of an informer. 353 U.S. at 65. There,

> the Government's informer was the sole participant, other than the accused, in the [narcotics] transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses. Moreover, a government witness testified that [the informer] denied knowing petitioner or ever having seen him before.

*Id*. at 64-65. The court pointed out that had the defendant known the identity of the informant and called him to testify at trial, the informant's contradiction or amplification of testimony offered by an undercover law enforcement officer "might have borne upon petitioner's knowledge of the contents of the package [of narcotics] or might have tended to show entrapment." *Id*. at 64.

Bickle has not met his threshold burden of establishing the testimony of the CI is relevant or helpful to any entrapment defense. He has made only a conclusory allegation that "[t]he informant in this case *may* have information relevant to issues of entrapment, imperfect entrapment, and sentencing entrapment." Motion at 2:6-7 (emphasis added). His mere suspicion that the CI may have information concerning an entrapment defense is insufficient to establish a "minimal threshold showing that disclosure would be relevant to one defense" to justify an *in camera* hearing. *Henderson*, 241 F.3d at 645.

Similarly, disclosure of the CI's identity and whereabouts is also not warranted because Bickle has not alleged facts which show that disclosure of the CI's identity is "essential to a fair determination of [his] cause" or that disclosure would be relevant or helpful to his defense. *Id*. (*citing United States v. Fixen*, 780 F.2d 1434, 1440 (9th Cir. 1986)) (internal citations omitted). Here, the CI did not play a

pivotal role in the arms transactions in which Bickle allegedly participated.  He or she was not the sole participant in the alleged crimes other than the accused.  In fact, the record reflects the CI was not involved at all with the Defendant's alleged criminal activity.  Nothing in the record to suggests the CI ever spoke with Bickle or that the CI knew Bickle.  The CI was not a percipient witness to any of the Bickle's alleged criminal activities.  The CI's only role was introducing ATF agents to Aguirre, who in turn informed the agents about the Defendants in this case.  The CI was only present at the agents' first meeting with Aguirre, and agents allegedly made all subsequent arms purchases from either Aguirre or Defendants Paul and Kaufman.  "This level of participation does not mandate disclosure."  *See, e.g., United States v. Valmer*, 245 Fed.Appx. 720, 723 (9th Cir. 2007) (CI only involved in one meeting with defendant and agents; disclosure not warranted on grounds that CI not involved in defendant's criminal activity to large degree) (*citing United States v. Tenorio-Angel*, 756 F.2d 1505, 1509 (11th Cir. 1985) (CI only introduced defendant to agents; disclosure not warranted).  Here, the CI's participation is even more removed than in *Tenorio.*  Therefore, because of the CI's removed involvement, Bickle has not shown the CI's testimony would be relevant or helpful to his defense or essential to a fair determination of this case.

Accordingly,

**IT IS ORDERED** that the Motion to Reveal (Dkt. #84) is DENIED.

Dated this 21st day of March, 2011.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE