1
2
3
4
5 **UNITED STATES DISTRICT COURT**
6 **DISTRICT OF NEVADA**
7
8 UNITED STATES OF AMERICA,                    )
                                               )          Case No. 2:10-cr-00565-RLH-PAL
9                        Plaintiff,            )
                                               )    <u>**REPORT OF FINDINGS AND**</u>
10 vs.                                         )    <u>**RECOMMENDATION**</u>
                                               )
11 NICHOLAS BICKLE,                            )          (Mtn to Dismiss - Dkt. #91)
                                               )
12                       Defendant.            )
   _____)
13

14        This matter is before the court on Defendant Nicholas Bickle's ("Bickle") Motion to Dismiss

15 Superceding Indictment for Prosecutorial Misconduct (Dkt. #91) filed on March 9, 2011 which was

16 referred to the undersigned for a report of findings and recommendation pursuant to 28 U.S.C. §

17 636(b)(1)(B) and LR IB 1-4.  The court has considered the motion, the government's Response (Dkt.

18 #102) filed March 25, 2011,  and Bickle's Reply (Dkt. #111)  filed April 4, 2011.

19                                    **BACKGROUND**

20        Bickle and co-Defendants, Andrew Kaufman and Richard Paul, were charged in a criminal

21 Complaint (Dkt. #2) on October 29, 2010, with conspiracy in violation of 18 U.S.C. § 371.  The

22 Complaint alleged Bickle and his co-Defendants conspired to deal in firearms without paying

23 applicable taxes, conspired to possess firearms not registered with the National Firearms Act

24 Registration and Transfer Record, and conspired to transfer unregistered firearms.  The Complaint

25 alleges that undercover agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")

26 purchased firearms from an unindicted coconspirator later identified as Omar Aguirre on June 22, 2010,

27 July 7, 2010, July 22, 2010 and August 6, 2010.  When Aguirre was confronted by ATF agents,

28 he became an informant and purchased firearms from co-Defendant Kaufman on August 18, 2010, and

1  from co-Defendant Paul on September 8 and 17, 2010.  The Complaint alleges Bickle supplied the

2  firearms to Paul and Kaufman and received most of the proceeds from the sales.

3       On November 3, 2010, ATF agents arrested Bickle while he was on duty as a Navy SEAL at the

4  Amphibious Base in Coronado, California.  Bickle made an initial appearance before United States

5  Magistrate Judge William V. Gallo in the Southern District of California on November 4, 2010.  He

6  was arraigned on the Complaint, and the government sought to detain him.  Judge Gallo held the

7  detention hearing on November 12, 2010, and entered an order granting release on conditions, including

8  the condition that Bickle post a $150,000 personal surety bond secured by real property.  The

9  government requested, and Judge Gallo granted, a stay of his release order to allow the government to

10  appeal.

11       On November 15, 2010, the government appealed Judge Gallo's decision, asserting Judge Gallo

12  was biased because of the his own military background.  The government withdrew its appeal on

13  November 19, 2010.  On November 23, 2010, an Indictment was filed charging Bickle and his co-

14  Defendants with one count of conspiracy and six counts relating to the sale of firearms.  The conduct

15  alleged in the Indictment mirrors that alleged in the Complaint.  Bickle was arraigned on the Indictment

16  before the undersigned on November 23, 2010.  At the arraignment, the government once again moved

17  to detain Bickle.  The undersigned released Bickle on most of the same conditions imposed by Judge

18  Gallo, with the additional condition of electronic monitoring.  On November 25, 2010, the government

19  asked the court to reconsider its order releasing Bickle.

20       The government filed a Superceding Indictment December 14, 2010 which added eight

21  additional charges.  The new charges arise out of the same conduct alleged in the Complaint; however,

22  they add possession and aiding and abetting to the charges alleged in the original Indictment.  On

23  December 22, 2010, Bickle filed a notice of intent to present expert evidence on the subject of his

24  mental condition.  Bickle was arraigned on the Superceding Indictment on December 23, 2010, and the

25  undersigned heard argument on the government's motion to reconsider the order releasing Bickle on

26  conditions.  The court granted the government's motion to reopen the detention hearing, but again

27  ordered Bickle released with several additional conditions.

28  ///

On January 11, 2011, Bickle's counsel received an email from Assistant United States Attorney Drew Smith in response to Bickle's notice of expert evidence concerning his possible mental defense. Mr. Smith advised Bickle's counsel that he had sought information from Bickle's military records concerning the absence or presence of certain psychological diagnoses in Bickle's medical or psychological files. Mr. Smith also notified Bickle's counsel that if Bickle was claiming diminished capacity, the government would seek to commit Bickle pursuant to 18 U.S.C.§ 4241 in order to evaluate Bickle's competency to stand trial.

On January 18, 2011, the government obtained a search warrant for Bickle's Hotmail email account. The warrant was issued by Magistrate Judge George Foley, Jr. and faxed to Microsoft with instructions to send all responsive material directly to ATF Special Agent Eric Fox. Counsel for Bickle received a copy of a disc provided to the government from Microsoft containing the emails from Mr. Bickle's Hotmail account on February 9, 2011 in discovery. Counsel for Bickle reviewed the disc the following day and learned that the government apparently had possession of attorney-client communications related to this case which included messages regarding trial strategy and legal advice. The disc also contained communications between Mr. Bickle and his psychiatrist. Counsel for Bickle contacted counsel for the government to express his concern that the government had access to these confidential materials and requested a copy of the affidavit supporting the search warrant. The government applied for and was granted an order unsealing the search warrant affidavit from the undersigned on February 22, 2011. A copy was provided to defense counsel.

## DISCUSSION

I.     **The Parties' Positions.**

A.     **Bickle's Motion to Dismiss (Dkt. #91).**

Bickle asserts the government has engaged in a pattern of misconduct in this case. First, the government aggressively pursued Bickle's detention while his co-defendants were released without objection by the government, and threatened to seek detention to have his competency to stand trial evaluated after Bickle filed a notice of intent to present expert evidence on the subject of his mental condition. Bickle contends that because he exercised his constitutional right under the Eighth Amendment to reasonable bail, and his right to present evidence of mental defect the government

1  responded by adding charges based on the same conduct, sought unauthorized access to his medical

2  records, and threatened to detain him using an inapplicable and rarely-invoked statute.  He also argues

3  that  the government flagrantly violated his Sixth Amendment right to counsel by "purposefully

4  eavesdropping" on attorney-client communications by seeking access to his entire email account.  As a

5  result, Bickle's due process rights have been irreparably harmed, and the Superceding Indictment

6  should be dismissed because of the government's vindictiveness.

7       Bickle contends that the Superceding Indictment is a direct result of Bickle's exercise of his

8  procedural and constitutional rights.  It was filed December 14, 2010, and added eight charges based on

9  the same seven transactions contained in the original complaint.  He contends it was a convenient

10  vehicle to reopen the detention issue had the undersigned denied its motion for reconsideration of the

11  release order at the December 23, 2010 hearing. He states that the government "has fervently argued for

12  detention" on three separate occasions.  Bickle asserts that when the government was unable to have

13  Bickle detained through the "usual means" they informed Bickle's counsel that if Bickle intended to

14  pursue a defense or mitigation based on mental disease or defect, the government would move to detain

15  him under 18 U.S.C. § 4241.  Bickle argues that statute is inapplicable to this case on its face, and

16  nothing more than a thinly-veiled threat to detain him and punish him for exercising his rights.  He

17  finds it "interesting to note" that Bickle's co-Defendants were released from custody with no opposition

18  from the government once they agreed to plead guilty, and that the unindicted co-conspirator has not

19  been taken into custody.  All of these circumstances, it is argued, establish the government is seeking to

20  punish Bickle for the exercise of his rights and establish a presumption of vindictiveness applies to this

21  case.

22       Additionally, Bickle maintains the government violated Bickle's Sixth Amendment right to

23  counsel by intentionally obtaining attorney-client communications.  The search warrant for Bickle's

24  Hotmail account was issued three months after Bickle was arrested in this case, and the government

25  was aware that Bickle was represented by counsel.  Despite this knowledge, the warrant did not exclude

26  privileged material, and it did not limit its scope to material that would be relevant to this case.  Bickle

27  contends that although there was a filter process in place to screen the emails for privileged

28  information, it was not followed.  Microsoft was instructed to provide responsive material directly to

4

Special Agent Eric Fox, the lead agent in this investigation, rather than a filter agent, and no emails were filtered out before it was released in discovery to defense counsel.  The search warrant affidavit said that privileged materials found by the filter agent would be placed in a sealed envelope for immediate return to Bickle and his attorneys.  However, this did not occur.  Bickle and his attorney discovered that the government had privileged communications when it received the disc received from Microsoft in discovery from the government.

Bickle also argues that even if the filter protocol described in the warrant had been followed, it would still have violated his Sixth Amendment right to counsel because it directs the ATF filter agent to contact the United States Attorney's Office if there was any question concerning whether a document is privileged.  Bickle characterizes this as a plan akin to having "the fox guarding the hen house." Bickle has been prejudiced by this violation of his Sixth Amendment right to counsel because the government has gained unfair advantage by obtaining access to Bickle's private communications with his attorney.  The warrant was obtained well after charges had been filed against Bickle, and after counsel had been retained.  Thus, there is no reliable way to distinguish between properly-obtained evidence and evidence that resulted from the government's intrusion on privileged communications. The government's total disregard for Bickle's privileged communications is also illustrated by the government's unauthorized access to information in his medical files to find evidence to refute his possible assertion of a diminished capacity defense.

Finally, Bickle argues that even absent any constitutional violation, the court should dismiss the Superceding Indictment under its supervisory power.  Under its supervisory power the court may dismiss an indictment to remedy a violation of a statutory or constitutional right, to preserve judicial integrity by ensuring that a conviction rests on considerations validly before a jury and to deter future illegal government conduct.  Bickle contends the government has violated his Fifth Amendment right to due process, his Sixth Amendment right to counsel, his right to present a complete defense, and his Eighth Amendment right to reasonable bail.  This conduct is "more than merely aggressive" and "has been designed to intimidate and punish Mr. Bickle before any of the charges against him have been proven beyond a reasonable doubt."  The government's conduct throughout these proceedings

///

5

1   constitutes "flagrant prosecutorial misconduct" which shocks the conscience and warrants dismissal of
2   the superceding indictment.

3   **B.     The Government's Response (Dkt. #102)**

4          The government opposes the motion arguing Bickle's prosecutorial vindictiveness claim lacks
5   merit under recent Ninth Circuit precedent "because a defendant cannot establish vindictive prosecution
6   based on pretrial charging enhancements, even if the defendant could establish a reasonable likelihood
7   of vindictiveness."  Additional charges were sought in a superceding indictment in this case because
8   this case is in pretrial stages and involves an ongoing investigation in which the government continues
9   to develop its understanding of the defendant's criminal acts.  Counsel for the government asserts it
10  may seek an additional superceding indictment in this case in the future.  A prosecutor is entitled to
11  deference in its pretrial charging decisions, and may add charges pretrial for any number of permissible
12  reasons.

13         Additionally, none of the conduct Bickle complains about in his motion amounts to
14  prosecutorial vindictiveness.  Bickle's motion does not cite any authority to support the proposition that
15  the government's conduct (1) in seeking to detain him, (2) informing counsel by email that it would
16  exercise its right to seek a mental competency hearing if he raised doubts about his competency, and (3)
17  the release of his cooperating co-Defendants who have plead guilty, amount to actionable prosecutorial
18  vindictiveness.  The government argues that it was not vindictive for it to seek detention because it had
19  overwhelming evidence that Bickle transported machine guns into the United States.  The government
20  also contends it is not vindictive to seek a mental competency hearing if the defendant raises doubts
21  about his mental competency, nor is vindictive to give more leeway to a cooperating defendant.

22         The government also disputes that it has violated Bickle's Sixth Amendment right to counsel by
23  applying for and obtaining a search warrant for Bickle's email account.  The affidavit supporting the
24  application for the search warrant provided for a filtering of potentially privileged materials which the
25  issuing judge approved.  The government represents that it is "currently following those procedures."
26  Because the government is following the filter procedures approved by Judge Foley, Bickle cannot
27  show prejudice necessary to establish a Sixth Amendment right to counsel claim under applicable Ninth
28  Circuit authority.  Additionally, even if Bickle could show prejudice, the Ninth Circuit has recognized

6

1    that dismissal of an indictment is not the appropriate form of relief.  Rather, the appropriate remedy for

2    improperly obtaining evidence is suppression rather than dismissal.

3         The government argues that it has already provided Bickle with all of the documents received

4    from Microsoft and counsel for Bickle can raise any privilege claims that he has.  The filter procedure

5    approved by Judge Foley eliminates any concerns that Bickle should have regarding the prosecution's

6    use of confidential information pertaining to defense plans and strategy.  Moreover, the Ninth Circuit

7    has expressly approved use of a filter agent procedure.  None of the attorney-client communications

8    contained on the disc provided by Microsoft have been admitted in evidence, and thus dismissal is not

9    an appropriate remedy.

10        Finally, the government argues that dismissal of an indictment with prejudice is one of the most

11   severe sanctions possible, and is appropriate only when no lesser remedial action is available.  In this

12   case, the government disputes that it has violated Bickle's constitutional or statutory rights, or engaged

13   in any government misconduct that would have any bearing on the outcome of his case.  Therefore,

14   Bickle cannot meet the Ninth Circuit test for dismissal under the court's supervisory powers.

15        **C.    Bickle's Reply (Dkt. #111)**

16        Bickle's reply reiterates arguments that the government's actions have gone far beyond

17   aggressive prosecution.  Bickle contends the government has consistently ignored the most basic

18   constitutional mandates and gained an unfair advantage by its misconduct.  The charges added in the

19   superceding indictment are not based on any new theory or new evidence obtained in the investigation

20   from the time of the initial complaint.  Rather, Counts 7 through 14 concern behavior originally charged

21   and merely add substantive charges consistent with the government's original understanding of the

22   evidence.  Nothing in the superceding indictment indicates that it was the result of additional

23   information uncovered in the 21 days between the indictment and the superceding indictment.  Rather,

24   Bickle asserts the superceding indictment was a strategic decision by the government to seek his

25   detention.  If the government obtains another superceding indictment as it suggests in its opposition it

26   might, this will the give the government yet another opportunity to move for Bickle's detention.

27        Bickle also asserts that the government has improperly analogized mental competence with

28   diminished capacity.  A diminished capacity defense addresses whether the defendant possessed the

ability to obtain the culpable state of mind defining the crime charged. Mental competence to stand trial, however, merely requires that the defendant is able to understand the nature and consequences of the proceedings against him or to assist in his defense. There is nothing in the record that would give the government any concern about Bickle's mental competency. Thus, Bickle contends the government is only concerned about getting him detained before he is convicted of any crime.

Bickle also maintains the government is continuing to violate his Sixth Amendment rights by having unfiltered access to his privileged attorney-client communications. Bickle asserts the government is only paying lip service to the filtering procedures outlined in the warrant while in practice it has completely ignored the warrant's requirement on how to handle privileged materials. The government has not provided Bickle's counsel with any sealed envelope containing privileged material separated from emails turned over to the government, or explained how it intends to delete data from the disc obtained from Microsoft. Bickle claims that the government's attempt to put the onus on the defense to raise privilege claims is completely contrary to the filtering procedures required by the Ninth Circuit, and that the government continues to gain an unfair advantage by unfettered access to his privileged communications.

Finally, Bickle reiterates that dismissal under the court's supervisory power is appropriate where, as here, the prosecution has gained unfair advantage in this prosecution by repeatedly violating his statutory and constitutional rights.

## II.   Law & Analysis.

### A.   Rule 12(b)

Pursuant to Fed. R. Crim. P. 12(b), "Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion." In determining a motion to dismiss an indictment, "a court is limited to the face of the indictment and must accept the facts alleged in that indictment as true." *United States v. Ruiz-Castro*, 125 F. Supp. 2d 411, 413 (D. Haw. 2000) (*citing Winslow v. United States*, 216 F.2d 912, 913 (9th Cir. 1954), *cert. denied*, 349 U.S. 922 (1955)). The indictment itself should be "(1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." *United States v.*
///

1   *Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993) (*citing United States v. Buckley*, 689 F.2d 893, 899 (9th

2   Cir. 1982), *cert. denied*, 460 U.S. 1086 (1983)).

3          **B.      Prosecutorial Misconduct**

4          In order to warrant dismissal on due process grounds, government misconduct must be "so

5   grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. King*,

6   200 F.3d 1207, 1213 (9th Cir. 1999) (citation and internal quotations omitted); *United States v. Green*,

7   962 F.3d 938, 941 (9th Cir. 1992) (citation omitted).  To obtain dismissal on this ground, a defendant

8   "must prove that the government's conduct was 'so excessive, flagrant, scandalous, intolerable, and

9   offensive as to violate due process.'"  *Unites States v. Edmonds*, 103 F.3d 822, 825 (9th Cir. 1996)

10  (*quoting United States v. Garza-Juarez*, 922 F.2d 896, 904 (9th Cir. 1993), *cert. denied*, 510 U.S. 1058

11  (1994)).

12         Bickle first asserts that the government's aggressive efforts to have him detained on multiple

13  occasions is prosecutorial misconduct and evidences a pattern of punishing him for the exercise of his

14  constitutional and statutory rights.  The government has certainly aggressively sought Bickle's

15  detention.  However, the government's efforts have been unsuccessful precisely because it is the court,

16  not the government that decides whether a defendant should be released or detained.  The government

17  has been unsuccessful at every turn before Judge Gallo and the undersigned.  Additionally, although the

18  government vigorously argued for detention both before Judge Gallo and the undersigned on more than

19  one occasion, it withdrew its appeal of Judge Gallo's release order, and did not even appeal the

20  undersigned's release orders.  The fact that the government initially exercised its right under 28 U.S.C.

21  § 3145 to seek review of Judge Gallo's release order, and its right under 28 U.S.C. § 3142 (f) to seek to

22  reopen the undersigned's decision releasing Bickle on conditions does not establish prosecutorial

23  misconduct.  The government's motion to reopen was granted because the court found the government

24  had met its burden of establishing changed circumstances, specifically, that the Navy was unwilling to

25  exercise the degree of supervision over Bickle discussed at the hearing before Judge Gallo.  Although

26  the motion to reopen was granted, the government's motion to detain was denied.  The government's

27  failure to exercise its statutory right to appeal the undersigned's orders releasing Bickle on conditions

28  suggests the government recognized the court's discretionary decisions were unlikely to be reversed by

9

1  the district judge.  Having failed to persuade Judge Gallo, or the undersigned, that Bickle should be
2  detained the government threw in the towel.

3       AUSA Drew Smith, the prosecutor previously assigned to this case, sent an email to counsel for
4  Bickle January 11, 2011, the content of which Bickle also claims establishes a pattern of prosecutorial
5  misconduct.  The email threads exchanged among counsel are attached as Exhibit A to Bickle's motion.
6  AUSA Smith first advised opposing counsel that in light of the court's order granting a continuance of
7  the trial date the government had more time and had decided to expand its investigation into other
8  criminal acts that Bickle may have committed that had not yet been charged.  The email exchanges
9  reflect that AUSA Smith informed counsel for Bickle that he had spoken to military physicians and
10 psychologists who had examined Bickle on multiple occasions "since you noticed that your client may
11 be attempting to use PTSD as a mitigating factor in this case."  AUSA Smith was informed that Bickle
12 did not mention PTSD to any of the physicians and psychologists, and wrote that once he received
13 copies of their evaluations he would provide them to opposing counsel.  Smith also asked opposing
14 counsel in email exchanges to notify him if counsel for Bickle intended to use PTSD as a defense at
15 trial or to mitigate Bickle's conduct.  If so, AUSA Smith indicated that he would invoke 18 U.S.C. §
16 4241 to file a motion with the court seeking to have Bickle committed to a federal correctional
17 institution to have him evaluated for any mental defect that may have an impact on his guilt or ability to
18 stand trial.  Smith noted that this process usually takes 30 - 45 days.

19      Counsel for Bickle responded to AUSA Smith the same day.  He inquired whether AUSA Smith
20 had Bickle's authorization for disclosure of the information or whether the information was obtained by
21 subpoena, and if so requested a copy of the subpoena.  Counsel for Bickle also indicated that he was
22 "puzzled" by Smith's citation to 18 U.S.C. § 4241, pointing out that Mr. Bickle had appeared before
23 the court on several occasions and there had been no question about his mental competency to stand
24 trial.  AUSA Smith responded that he had been informed by the military that Bickle's exams were not
25 privileged and that he had not actually seen the records, but had been told of their contents.  AUSA
26 Smith explained that his reference to 18 U.S.C. § 4241 responded to the notice counsel for Bickle filed
27 December 22, 2010 that he may pursue a mental health defense and specifically that Bickle had
28 exhibited symptoms of head trauma, Post-Traumatic Stress Disorder or possibly both.  If so, Smith

1   opined the government was entitled to have Bickle examined "because if he had a diminished capacity

2   for the 2 years or so he was committing these crimes, it would be rather amazing if he didn't still have it

3   today."  After making some additional comments, AUSA Smith stated he was simply informing

4   opposing counsel of how the government was entitled to respond and what its intentions were if and

5   when defense counsel formalized such a defense.

6        The court's review of the email exchanges suggests AUSA Drew Smith was engaging in some

7   posturing and a bit of bravado often characteristic of trial lawyers.  However, the government has not

8   applied to have Bickle examined under the provisions of 18 U.S.C. § 4241.  Moreover, even if it had,

9   the court, rather than the government, would decide the applicability of the statute.  Section 4241

10  authorizes a defendant or an attorney for the government to file a motion for a hearing to determine the

11  mental competency of the defendant.  If the court grants the motion or orders a competency hearing on

12  its own motion, the statute specifies what is to occur.  If a psychiatric or psychological examination is

13  ordered it must be conducted by a licensed or certified psychiatrist or psychologist.  *See* 18 U.S.C. §

14  4247(b).  Although the court has the authority to commit a defendant to the custody of the Attorney

15  General for placement in a suitable facility for a period not to exceed 45 days for a psychological

16  examination, it is not required to do so.  Id.  Thus, construing the government's suggestion it might

17  invoke the provisions of 18 U.S.C. § 4241 as a vindictive threat to get Bickle detained is a reach

18  especially where, as here, the government has been singularly unsuccessful in its efforts to detain Bickle

19  before trial.

20       Bickle next argues that because the eight additional charges added in the superceding indictment

21  involve the same conduct contained in the complaint and original indictment, seeking the superceding

22  indictment was vindictive.  In *United States v. Armstrong*, the Supreme Court cited a long line of prior

23  precedents holding the Attorney General and the United States Attorney have broad discretion to

24  enforce federal criminal laws.  517 U.S. 456, 463 (1996).  A presumption of regularity supports

25  prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume that they

26  have properly discharged their official duties."  *Id*. at 464 (*citing United States v. Chemical Foundation,*

27  *Inc.,* 272 U.S. 1, 14-15 (1926).  It is well-established that as long as a prosecutor has probable cause to

28  believe the accused has committed a violation of law, the decision whether or not to prosecute and what

1    charge to bring before a grand jury generally rests entirely in the discretion of the prosecutor.

2    *Armstrong*, 517 U.S. at 464 (*citing Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978)).

3         The Supreme Court has made it clear that the broad discretion afforded prosecutors:

4    rests largely on the recognition that the decision to prosecute is particularly ill-suited to
5    judicial review. Such factors as the strength of the case, the prosecution's general
     deterrence value, the Government's enforcement priorities, and the case's relationship to
6    the Government's overall enforcement plan are not readily susceptible to the kind of
     analysis the courts are competent to undertake. Judicial supervision in this area, moreover,
7    entails systematic cause for particular concern. Examining the basis of the prosecution
     delays the criminal proceeding, threatens to chill law enforcement by subjecting the
8    prosecutor's motives and decision-making to outside inquiry, and may undermine
     prosecutorial effectiveness by revealing the Government's enforcement policy. All these
9    are substantial concerns that make the courts properly hesitant to examine the decision
     whether to prosecute.

10   *Wayte v. United States*, 470 U.S. 598, 607 (1985).

11        Notwithstanding the prosecutor's broad discretion and the presumption of regularity supporting

12   prosecutorial decisions, the Due Process Clause of the Fifth Amendment prohibits a prosecutor from

13   bringing charges against a defendant in retaliation for the defendant's exercise of a statutory,

14   procedural, or other protected right. *Blackledge v. Perry,* 417 U.S. 21, 27 (1974). Stated another way,

15   the Due Process Clause prohibits punishing "a person because he has done what the law plainly allows

16   him to do." *United States v. Goodwin,* 457 U.S. 368, 372 (1982) (internal quotation marks and citations

17   omitted). However, the Supreme Court has held that "exceptionally clear proof" is required before a

18   court may infer an abuse of prosecutorial discretion. *McCleskey v. Kemp,* 481 U.S. 279, 297 (1987).

19   Because courts ordinarily presume that public officials have properly discharged their official duties, a

20   defendant who contends that a prosecutor made a charging decision in violation of his constitutional

21   rights has a demanding standard of proof. *Nunes v. Ramirez-Palmer,* 485 F.3d 432, 441 (9th Cir. 2007)

22   (internal citations omitted).

23        In order to establish a *prima facie* case of prosecutorial vindictiveness, "a defendant must show

24   either direct evidence of actual vindictiveness or facts that warrant an appearance of such." *Id.* (*citing*

25   *United States v. Montoya,* 45 F.3d 1286, 1299 (9th Cir. 1995)). "Evidence indicating a realistic or

26   reasonable likelihood of vindictiveness may give rise to a presumption of vindictiveness on the

27   government's part." *United States v. Garza-Juarez,* 992 F.2d 896, 906 (9th Cir. 1993). A defendant

28   may establish prosecutorial vindictiveness by producing direct evidence of the prosecutor's punitive

1     motivation toward him. *United States v. Jenkins,* 504 F.3d 694, 699 (*citing United States v. Gallegos-*

2 *Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982)). Alternatively, a defendant is entitled to a presumption of

3 vindictiveness if he can show that additional charges were filed because he exercised a statutory,

4 procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness. *Id.*

5        To establish a presumption of vindictiveness, Bickle must demonstrate a reasonable likelihood

6 that the government would not have brought the additional charges and/or taken the other actions he

7 complains about in his motion, had he not elected to exercise a statutory, procedural or other protected

8 right. *Jenkins,* 504 F.3d at 700 (*citing Gallegos-Curiel*, 681 F.2d at 1169). "[T]he appearance of

9 vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood of

10 prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the

11 defendant because he has exercised his specific legal rights." *Id.* However, to establish a presumption

12 of vindictiveness, a defendant is not required to show that the prosecutor acted in bad faith or

13 maliciously sought the additional charge. *Jenkins,* 504 F.3d at 699.

14        Once a presumption of vindictiveness has arisen, the burden shifts to the prosecution to show

15 that "independent reasons or intervening circumstances dispel the appearance of vindictiveness and

16 justify its decisions." *United States v. Hooton,* 662 F.2d 628, 634 (9th Cir. 1981), *cert. denied*, 455

17 U.S. 1004 (1982); *see also Blackledge*, 417 U.S. at 29 n.7; *Garza-Juarez,* 992 F.2d at 906; *United*

18 *States v. Ruesga-Martinez,* 534 F.2d 1367, 1369-70 (9th Cir. 1976). "While most vindictive

19 prosecution cases involve re-indictment of a defendant, the mere filing of an indictment can support a

20 charge of vindictive prosecution." *Montoya*, 45 F.3d at 1299 (*citing Hooton,* 662 F.2d at 634).

21 However, a defendant "must still prove an improper prosecutorial motive through objective evidence

22 before any presumption of vindictiveness attaches." *Id.* (*citing Goodwin*, 457 U.S. at 380 n.12).

23        In *United States v. Kent*, 633 F.3d 920 (9th Cir. 2011), the Ninth Circuit recently decided the

24 standard of review on a vindictive prosecution claim, holding that *de novo* review is the appropriate

25 standard. There, the Ninth Circuit reiterated that a prosecutor violates due process when he or she seeks

26 additional charges solely to punish a defendant for exercising a constitutional or statutory right. *Id*. at

27 926. The court also reaffirmed prior precedents that the defendant may establish a vindictive

28 prosecution claim either by producing direct evidence of the prosecutor's punitive motivation, or by

1   showing that the circumstances establish a reasonable likelihood of vindictiveness giving rise to a

2   presumption that the government must, in turn, rebut.  *Id.* (internal citations and quotations omitted).

3   However, citing its decision in *United States v. Gamez-Orduno*, 235 F.3d 453 (9th Cir. 2000), the Ninth

4   Circuit reiterated that when additional charges are added during pretrial proceedings, the court may not

5   presume vindictiveness from the fact that a more severe charge followed on, or resulted from the

6   defendant's exercise of a right.  *Id.*  Thus, the court held that a defendant may not establish a

7   presumption of vindictiveness when a prosecutor enhances charges pre trial.  *Id.*

8        The Court of Appeals also rejected the defendant's argument that the prosecutor's pre-trial,

9   charging decisions should be given deference only when enhanced charges arise from the context of

10  explicit plea negotiations, stating its prior cases did not draw such a distinction.  *See* e.g. *United States*

11  *v. Austin*, 902 F.2d 743, 745 (9th Cir. 1990) (holding that the fact that the prosecution adds charges pre

12  trial after a defendant asserts some right does not establish a presumption of vindictiveness).  The *Kent*

13  decision also cited *Wasman v. United States*, 468 U.S. 559, 566-67 (1984), for the proposition that the

14  Supreme Court has "admonished against expanding the class of cases to which the vindictiveness

15  presumption applies."  *Kent* at 926.  As the Ninth Circuit noted, "[a]lthough enhanced charges will

16  often accompany failed plea negotiations, prosecutors may add charges pre trial for any number of

17  permissible reasons, such as coming to a new understanding of the crime or evidence."  *Id.*  Because the

18  Supreme Court has urged deference to a prosecutor's discretion to elevate charges prior to trial

19  "defendants challenging pre-trial charging enhancements cannot avail themselves of a presumption of

20  vindictiveness."  *Id.*

21        In *Kent*, the Ninth Circuit also held that a prosecutor who threatens enhanced charges to induce

22  a defendant's cooperation as an informant may carry out that threat if the defendant declines to

23  cooperate even if the defendant was willing to plead guilty unconditionally to lesser charges.  *Id.* at 928.

24  The Court of Appeals reasoned that in the give and take of plea bargaining, there is no element of

25  punishment or retaliation by a prosecutor who brings additional charges by a defendant who turns down

26  a deal as long as the accused is free to accept or reject the prosecution's offer.  *Id, citing Bordenkirsher*,

27  434 U.S. at 363.  The *Kent* decision also rejected the defendant's argument that a prosecutor may carry

28  out a plea bargaining threat of enhanced charges only when a defendant has refused to plead guilty and

1    not when a defendant has rejected other government conditions.  Citing a long line of its prior cases, the

2    Ninth Circuit noted that it had sanctioned conditioning of plea agreements on acceptance of terms apart

3    from pleading guilty, including waiving appeal, and cooperating as an informant against others.  *Id*.

4    (internal citations and quotations omitted).  For these reasons, the Ninth Circuit concluded that "[i]f

5    prosecutors may permissibly demand these conditions, it follows that they may make good on threats to

6    enhance charges if these conditions are not accepted." *Id*.  Thus, the court concluded that there was

7    nothing in the record to support a claim of vindictive prosecution when the prosecutor made good on a

8    plea bargaining threat to file enhanced charges despite the Defendant's willingness to unconditionally

9    plead guilty to the initial charges.

10          Applying these principles, the court finds that Bickle has not established that the government's

11   conduct in this case establishes that the prosecutors in this case are motivated by punitive *animus*.  The

12   fact that the prosecution sought a superseding indictment adding additional charges prior to trial does

13   not establish a presumption of vindictiveness.  As the Ninth Circuit stated in *Gamez-Orduno*, and

14   reiterated in *Kent*, "vindictiveness will not be presumed simply from the fact that a more severe charge

15   followed on, or even resulted from, the Defendant's exercise of a right." *Gamez-Orduno*, 235 F.3d at

16   462; *Kent*, 633 F.3d at 926.

17          **C.      THE RIGHT TO COUNSEL**

18          The Sixth Amendment provides that "[i]n all prosecutions, the accused shall enjoy the right . . .

19   to have the Assistance of Counsel for his defense."  *U.S. Const.*, amend. VI.  The Sixth Amendment

20   right to counsel is meant to assure fairness in the adversary criminal process. *United States v*

21   *Danielson*, 325 F.3d 1054, 1066 (citing *United States. v. Cronic*, 466 U.S. 648, 656 (1984)).  When the

22   Sixth Amendment is violated, a serious risk of injustice infects the trial itself.  *Id*. (internal citations and

23   quotations removed).  Thus when a criminal defendant alleges the prosecution has infringed upon his or

24   her Sixth Amendment right to counsel, the Supreme Court has instructed courts to evaluate such

25   prosecutorial behavior based on its effect on the fairness of the trial.  *Id*. (citing *United States v. Agurs*,

26   427 U.S. 97, 110 (1976)).  The Ninth Circuit reviews *de novo* whether a defendant's Sixth Amendment

27   rights were violated as a question of law.  *United States v. Hernandez*, 937 F.2d 1490, 1493 (9th Cir.

28   ///

15

1991) (citing *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824 (1984)).

"Despite the high approbation our system has for the attorney-client privilege, the Supreme Court has twice held that government invasion of that privilege or the defense camp is not sufficient by itself to cause a Sixth Amendment violation.  The defendant must have been *prejudiced* by such actions." *United States v. Hernandez*, 937 F.2d 490, 493 (9th Cir. 1991) (citing *United States v. Morrison*, 449 U.S. 361, 365 (1981), and *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977)).  Relying on *Weatherford*, and its own decision in *United States v. Glover*, 596 F.2d 587 (9th Cir. 1979), the Ninth Circuit has held that:

> mere government intrusion into the attorney-client relationship, although not condoned by the court, is not of itself violative of the Sixth Amendment right to counsel. Rather, the right is only violated when the intrusion substantially prejudices the defendant.

*United States v. Irwin*, 612 F.2d 1182, 1186-87 (9th Cir. 1980).

In *Irwin*, the Ninth Circuit held that prejudice may be demonstrated when (1) evidence gained through the interference is used against the defendant at trial; (2) the prosecution uses confidential information pertaining to the defense plans and strategy; (3) the government's interference destroys the defendant's confidence in his attorney; and (4) from other actions designed to give the prosecution an unfair advantage at trial.  *Id.*  The Ninth Circuit has articulated what a defendant must show to establish a Sixth Amendment violation:

> In order to show that the government's alleged intrusion into the attorney-client relationship amounted to a violation of the Sixth Amendment, a defendant must show, at a minimum, that the intrusion was purposeful, that there was communication of defense strategy to the prosecution, or that the intrusion resulted in tainted evidence.

*United States v. Fernandez*, 388 F.3d 1199, 1240 (9th Cir. 2004).  The Ninth Circuit requires a defendant alleging a Sixth Amendment violation for improper governmental interference with a confidential relationship between the defendant and his counsel to show "substantial prejudice." "Substantial prejudice results from the introduction of evidence gained through the interference against the defendant at trial, from the prosecution's use of confidential information pertaining to defense plans and strategy, and from other actions designed to give the prosecution an unfair advantage at trial." *Williams v. Woodford*, 306 F.3d 665, 683 (9th Cir. 2002).

16

1    Most Sixth Amendment interference cases involve allegations the prosecutor obtained certain
2    evidence as a result of improper interference with the attorney-client relationship, most often an
3    incriminating statement made to a government informant, or physical evidence.  *United States v.*
4    *Danielson*, 325 F.3d at 1070.  In cases where it is alleged the prosecution obtained a particular piece of
5    evidence by interfering with the attorney-client relationship, the Ninth Circuit has placed the burden on
6    the defendant to show substantial prejudice.  *Id*. at 1070.  For example, in *United States v. Bagley*, 641
7    F.2d 1235, 1238 (9th Cir. 1981), the court required the defendant to show "that he suffered prejudice at
8    trial as a result of evidence obtained from interrogation outside the presence of counsel."  "Placing the
9    burden on the defendant in such cases makes good sense, for the defendant is in at least as good a
10   position as the government to show why, and to what degree, a particular piece of evidence was
11   damaging."  *Danielson* at 1070.

12   By contrast, the Ninth Circuit has recognized that when it is established the prosecution's
13   wrongful intrusion in the attorney-client relationship results in obtaining the defendant's trial strategy,
14   "the question of prejudice is more subtle."  *Id*.  "In such cases, it will often be unclear whether, and
15   how, the prosecution's improperly obtained information about the defendant's trial strategy may have
16   been used, and whether there was prejudice.  More important, in such cases the government and the
17   defendant will have unequal access to knowledge."  *Id*.  As a result, the Ninth Circuit has adopted a two
18   step burden-shifting analysis if it is established the prosecution has acquired defense plans and strategy.
19   *Id*. at 1071.

20   Under this two step analysis, the defendant bears the initial burden of making "a *prima facie*
21   showing of prejudice."  *Id*. (citing *United States v. Mastroianni*, 749 F.2d 900, 907-08 (1st Cir. 1984)).
22   To make a *prima facie* showing of prejudice, the defendant must demonstrate the government "acted
23   affirmatively to intrude into the attorney-client relationship and thereby to obtain the privileged
24   information."  *Id*.  Once a *prima facie* showing has been made, the burden shifts to the government to
25   show there has been no prejudice to the defendant as a result of these communications.  *Id*. (quoting
26   *Mastroianni*, 749 F.2d at 908) (internal quotations removed).  "The mere assertion by the government
27   of the integrity and good faith of the prosecuting authorities is not enough"; rather, "the government
28   must present evidence, and must show by a preponderance of that evidence that all of the evidence it

17

proposes to use and all of its trial strategy were derived from legitimate independent sources." *Id*. at 1072 (quoting *Kastigar v. United States*, 406 U.S. 441, 460 (1972)) (internal quotations removed). The "prosecution team can avoid this burden either by not improperly intruding into the attorney-client relationship in the first place, or by insulating itself from privileged trial strategy information that might thereby be obtained." *Id*. "In the absence of such an evidentiary showing by the government, the defendant suffered prejudice." *Id*.

The government provided counsel for Bickle with a copy of the disc it obtained from Microsoft for the content of Bickle's hotmail account. Counsel for Bickle states the disc contains confidential attorney-client communications and confidential communications Bickle had with his psychiatrist. Counsel for Bickle claims that the government is continuing to violate its Sixth Amendment rights by having unfiltered access to his privileged attorney-client communications. Counsel for the government represents that the filtering procedures approved by Judge Foley have been and are being followed. However, counsel for the government does not explicitly state that the case agents, government counsel or others involved in the prosecution of this matter have not had access to privileged communications. The government's opposition has also not addressed Bickle's claim that it has failed to follow the requirement imposed by Judge Foley that any privileged communications obtained pursuant to the warrant he issued be placed in a sealed envelope and provided to defense counsel. The court will address these issues in the context of Bickle's motion to suppress. However, the court finds that Bickle has not established a Sixth Amendment violation that would warrant the severe sanction of dismissal of the superceding indictment.

For all of the foregoing reasons,

**IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that Defendant's Motion to Dismiss (Dkt. #91) be **DENIED**.

Dated this 6th day of May, 2011.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

18