1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,                   )
                                            )   Case No. 2:10-cr-00565-RLH-PAL
                             Plaintiff,      )
                                            )   **REPORT OF FINDINGS AND**
vs.                                         )   **RECOMMENDATION**
                                            )
NICHOLAS BICKLE,                            )   (Mtn to Suppress - Dkt. #92)
                                            )
                             Defendant.      )
_____    )

     This matter is before the court on Defendant Nicholas Bickle's ("Bickle") Motion to Suppress Evidence (Dkt. #92) filed on March 9, 2011, which was referred to the undersigned for a report of findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  The court has considered the Motion, the government's Response (Dkt. #105) filed March 25, 2011,  Bickle's Reply (Dkt. #110)  filed April 4, 2011, the representations and arguments of counsel at a hearing conducted May 13, 2011, and evidence adduced at an evidentiary hearing conducted June 10, 2011.

## BACKGROUND

     Bickle was charged, along with two co-Defendants, Andrew Kaufman and Richard Paul, in a single-count Complaint (Dkt. #2) on October 29, 2010, with conspiracy in violation of 18 U.S.C. § 371. An Indictment (Dkt. #21) and a Superseding Indictment (Dkt. #49) were returned on November 23, 2010, and December 14, 2010, respectively.  The Superseding Indictment charged all the Defendants with conspiracy and thirteen various firearms offenses.

     In the current motion, Bickle seeks to suppress emails obtained by the government pursuant to a search warrant served on Microsoft for the contents of Bickle's Hotmail account.  Before the search warrant was obtained, Assistant United States Attorney ("AUSA") Drew Smith sent a preservation

letter to Microsoft concerning Bickle's Hotmail email account on December 1, 2010.  On January 11, 2011, the government applied for a search warrant directed to Microsoft which was supported by an affidavit of probable cause submitted by Special Agent Eric Fox of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  The search warrant was issued by United States Magistrate Judge George W. Foley the same day.  On February 7, 2011, defense counsel received a disk in discovery from the government that contained the emails provided by Microsoft in response to the search warrant. The government applied for and was granted an order unsealing Agent Fox's affidavit in support of the search warrant, and a copy was provided to counsel for Bickle.  A copy of Special Agent Fox's affidavit is attached as Exhibit "A" to the motion.

## DISCUSSION

**I.     The Parties' Positions.**

    **A.     Bickle's Motion to Suppress (Dkt. #92).**

    Bickle asserts that the search warrant was based on mere speculation, conjecture, and possibilities that failed to establish probable cause and that it was overbroad as to time and scope. Additionally, he claims that the affidavit contains materially misleading statements that entitle him to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

    Bickle acknowledges that in deciding the motion to suppress, this court's review is limited to determining whether substantial evidence supported its issuance and that the court does not conduct a *de novo* review.  However, he claims Agent Fox's affidavit lacked substantial evidence and contained only "flimsy inferences" to support the agent's belief that relevant evidence might be found in Bickle's Hotmail account.  For example, the assertion that Bickle used his Hotmail account to contact people who "could potentially be witnesses or targets of the government's investigation" is insufficient to establish probable cause to search the account for evidence of firearms trafficking crimes.  Bickle also contends the affidavit does not establish probable cause to search for travel information because it only states that Bickle traveled during the period during which the conspiracy allegedly occurred, used his email to confirm those travel reservations, and that firearms were distributed in various states.

    Additionally, the affidavit's reference to an email from Bickle to Matthew Klier advising Klier that the ATF may approach him and noting that other people have retained counsel does not establish

probable cause to believe Bickle's email account would contain evidence of witness tampering.  Bickle also maintains the affidavit lacked probable cause to search his Hotmail account for his communications with Microsoft technical support or to obtain records of his online subscription services.  For all of these reasons, Bickle argues the affidavit supporting the search warrant failed to make a particularized showing of probable cause to believe that crimes had occurred and that evidence of those crimes would be found in his email account.

Second, Bickle argues the emails seized should be suppressed because the search warrant was overly broad in both time and scope.  Bickle asserts he had a reasonable expectation of privacy in his email account, as evidenced by the fact that the account was password protected and contained communications with his attorneys and therapist.  Relying on *United States v. Washington*, 797 F.2d 1461, 1473 (9th Cir. 1986), he maintains the warrant is "patently overbroad" because it permits seizure of information about people associating with him.  Additionally, Bickle claims the warrant is overbroad because it contains no temporal limitation for seizing information from the email account despite the fact that the government alleges the conspiracy and arms transactions occurred between March 30, 2009, and November 4, 2010.  The warrant should have been restricted to production of responsive emails created, sent or received during the period of alleged criminal conduct.

Bickle argues that the warrant is so overbroad that it amounts to a general warrant that authorized a rummaging through his personal belongings which is prohibited by the Fourth Amendment.  The search warrant was not limited to the charged offenses and instead sought to seize all communications Bickle made or received via his email account.  The warrant also failed to contain necessary language identifying emails and files constituting attorney-client communications or attorney work product in violation of 42 U.S.C. § 2000aa-11.  Although the affidavit assured the court that a filter agent would be assigned to review and remove any potentially privileged materials recovered from the warrant, this was not done.  As a result, Bickle asserts investigating officers and prosecutors involved in this case obtained and read confidential attorney-client communications directly related to his defense.

Bickle also argues that the warrant's authorization to seize address books, contact, buddy lists, and technical support materials rendered it overbroad because there was no basis for probable cause to

1    obtain these records.  The address books or contact information can only be used to obtain evidence of

2    association which is prohibited, and the affidavit does not contain any discussion why records regarding

3    communications between Bickle and Microsoft's technical support services were being sought.

4         Finally, Bickle asserts he is entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154

5    (1978), because there are false or misleading statements in the affidavit which were material to a

6    finding of probable cause.  Specifically, Bickle contends the affidavit intentionally misled the court by

7    suggesting that he and his co-Defendants sold guns to an undercover ATF officer, when the government

8    has no evidence that Bickle ever sold guns to an undercover ATF officer.  Bickle also claims that the

9    affidavit improperly misled the court to draw the inference that Bickle tampered with witnesses by

10   using his email account when the government has no evidence to support this inference.  The affidavit

11   refers to emails Bickle is alleged to have sent to Matt Klier telling Klier that he may be contacted by

12   ATF and that "some guys have opted [for] lawyers and have ben [sic] left alone.  I hope you are doing

13   well."  Nothing in this email is a violation of law, but is a "red herring" intended to mislead the court

14   into believing Bickle was tampering with witnesses.  Additionally, Bickle claims the government

15   intentionally commingled unrelated events to mislead the court about wire transfers Klier received from

16   Bickle.  The $800.00 wire transfer referred to in paragraph 25 of the affidavit related to paying Klier for

17   repairing Bickle's motorcycle, about which the government knew.  However, the way the affidavit is

18   written suggests that wire transfers were made which were related to the sale of firearms to an

19   undercover agent by co-Defendant Richard Paul.  The affidavit also refers to an email exchanged with

20   Jason Cole which Bickle contends is another "red herring" intended to create the impression that Bickle

21   used his email and texts as a tool to sell guns to Cole when the government has no evidence to support

22   this baseless implication.

23        **B.    The government's Response (Dkt. #105)**

24        The government opposes the motion arguing that under the totality of the circumstances, Judge

25   Foley had a substantial basis for concluding that probable cause existed to seize the contents of Bickle's

26   email account.  The affidavit supporting the search warrant relates that ATF learned that Bickle used

27   the email account polarbickle@hotmail.com and cooperating Defendants indicated Bickle used this

28   account as his primary means of contacting people while deployed in Iraq until March 2009.  This

4

1    March 2009 time frame is when the government asserts Bickle was smuggling the large majority of

2    firearms at issue in this case into the country.  Co-defendant and co-conspirator Richard Paul was in

3    email contact with Bickle at this time.  These facts establish a fair probability that evidence of Bickle's

4    crime would be present in his email account.

5            Additionally, the affidavit relates that ATF learned Bickle used his email address to contact

6    potential witnesses and targets in this case.  Potential witness Jason Cole had cooperated with ATF, but

7    after Bickle wrote a message to him, he stopped cooperating.  On another occasion, Bickle sent an

8    email to potential witness Matt Klier.  The content of the email was related in the affidavit which was

9    sent one day after ATF interviewed Klier's employer, Global Studies Group, about the underlying

10   firearms trafficking scheme.  Thus, the government maintains that under the totality of these

11   circumstances, there was a sufficient basis for the issuing judge to determine Bickle was attempting to

12   obstruct justice or engage in witness tampering and that evidence of these offenses would be found in

13   Bickle's email account.  The affidavit referenced discussions about wire transfers which referred to

14   motorcycles or motorcycle parts because the government had information from co-Defendant Paul that

15   Bickle told Paul to explain wire transfers derived from firearm sales as payments for a motorcycle.  The

16   affidavit appropriately sought information about Bickle's travel because ATF had information that

17   Bickle traveled extensively during 2009 and 2010 and that firearms were distributed in at least three

18   states as part of the conspiracy involved in this case.  The affidavit indicated that ATF knew that Bickle

19   used the Hotmail account address for Southwest Airlines as of November 2010 and received a text

20   message during the period of the conspiracy stating that his hotel confirmation had been sent to his

21   email account.

22           More importantly, the affidavit related that ATF learned Bickle used and continued to use the

23   Hotmail account to communicate with individuals he was supplying with illegally imported firearms.

24   Bickle's use of text messages, and the capacity of his email box, coupled with the preservation letter

25   ATF sent to Microsoft made it likely that any messages sent to Bickle would still be in the Hotmail

26   account.

27           The government disputes that the warrant was overbroad in seeking information about Bickle's

28   associations, or in failing to contain necessary language to prohibit the government's access to

privileged attorney-client communications or attorney work-product.  However, even if the warrant is overbroad, the remedy is to suppress only the items seized pursuant to the overbroad portions of the warrant.  The government maintains that Bickle fails to recognize the complexity of segregating electronic data and ignores applicable Ninth Circuit case law regarding association information and provisions in the search warrant that limit information that can be seized.

In this case, the warrant only sought information pertaining to Bickle's association which constitute fruits, evidence and instrumentalities of violations of specific enumerated statutes in which Bickle and members of his conspiracy were involved.  As such, the warrant is not overbroad.  The government also points out that the affidavit supporting the search warrant requested emails from March 1, 2009, the same month that Bickle allegedly smuggled the majority of firearms at issue in this case into the country.  Additionally, because the government had information that Bickle continued to use his email account to contact people regarding a conspiracy after his arrest, the search warrant is not temporally overbroad by seeking information after November 4, 2010.

The government also asserts that the warrant is not overbroad in scope because it failed to contain necessary language identifying emails and files constituting attorney-client communications or attorney work-product.  The government contends that Microsoft informed ATF that they could not or would not sort files to withhold information regarding Bickle's legal representation.  Additionally, the Ninth Circuit has authorized use of the filter agent process as an appropriate means for the prosecution to insulate itself from potentially confidential materials.

Finally, the government maintains Bickle has not established that there were any false or misleading statements in the affidavit which would entitle him to a *Franks* hearing.  The portions of the warrant Bickle cites in support of his request do not establish a single, false statement was made, and the motion makes only a vague allegation that false statements were made knowingly, intentionally or with reckless disregard for the truth.  Bickle's request for a *Franks* hearing is not accompanied by an affidavit or other reliable statements supporting his conclusory and baseless statements.  For example, the affidavit did not mislead the court into believing that Bickle sold guns to an undercover ATF officer.  Rather, the government had substantial evidence that Bickle was part of a conspiracy that "sold or otherwise distributed" firearms to an ATF officer and stated this in the affidavit.  Bickle's citation to

1  the affidavit's reference to the Klier emails is also insufficient to establish that the government made

2  false or misleading statements or omissions knowingly, intentionally, or with reckless disregard for the

3  truth.

4         Although the government maintains that the warrant contained probable cause for the items

5  authorized to be searched for and seized, if the court disagrees, the evidence is admissible under the

6  good faith exception to the exclusionary rule.  In this case, the affidavit reflects the government had

7  overwhelming evidence that linked Bickle to illegal transportation of firearms.  Therefore, even if the

8  warrant lacked probable cause or was overbroad, the court should deny the motion to suppress

9  evidence.  The government also argues that, even if the warrant lacked probable cause or was

10  overbroad, the court should deny the motion to suppress based on the inevitable discovery exception to

11  the exclusionary rule.  The government acknowledges that it must establish by a preponderance of the

12  evidence that it would have ultimately or inevitably discovered the same evidence pursuant to the

13  warrant.  The government asserts that, because it seized the Defendant's cellular telephone which had

14  email information stored on it that, "to the extent that email account information stored on Defendant's

15  seized telephone overlaps with e–mail account information obtained through the search at issue here,

16  the court should not suppress that information."

17         **C.     Bickle's Reply (Dkt. #110)**

18         Bickle replies that the government's justifications for the warrant lack substance and that there

19  are no facts in the affidavit supporting the conclusion that evidence of crimes would be found in

20  Bickle's Hotmail account.  The warrant is overbroad because it authorized seizure of the contents of all

21  emails sent to and from the account, as well as Bickle's entire contact list, calendar data, and personal

22  pictures, data, or files found in the account.  This authorized a general exploratory rummaging of his

23  private communications in violation of the Fourth Amendment.

24         Bickle also reiterates his arguments that the government ignored its own filtering procedures

25  because Microsoft directly delivered the disk to the lead ATF agent involved in this case.  Additionally,

26  although the affidavit provided that potentially-privileged materials would be placed in a sealed

27  envelope and shared with defense counsel, "it is unclear how that could possibly work because of the

28  format in which the emails were disclosed by Microsoft," *i.e.* they were provided in electronic format

1  on a CD.  Because privileged and non-privileged materials are mixed together, the only way the

2  filtering process could work would be if the filter agent printed out hard copies of the data and only

3  provided non-privileged emails in hard copy to the government.  Because counsel for Bickle has not

4  received any communication from counsel for the government concerning whether potentially

5  privileged emails were removed from the government's copy, the government continues to circumvent

6  the filtering procedures required by the Ninth Circuit as described in *United States v. Danielson*, 325

7  F.3d, 1054, 1071-72 (9th Cir. 2003).

8          Finally, Bickle argues he is entitled to a *Franks* hearing because the entire affidavit submitted to

9  Judge Foley "is riddled with omissions and conclusions based on speculation" and was a clear attempt

10  to mislead him into finding probable cause where there was none.

11  **II.     The May 13, 2011, Hearing.**

12          The government's opposition to the motion to suppress did not address with any specificity

13  Bickle's arguments that the government did not follow the filter procedures outlined in the warrant.  As

14  a result, the court set the matter for oral argument and directed that the government be prepared to

15  address, in detail, the filter procedures that were followed in this case.  At the May 13, 2011, hearing,

16  Mr. Pokorny, counsel for Bickle, outlined the chronology of what occurred.  Bickle was arrested

17  November 3, 2010, and a month later the government sent a preservation letter to Microsoft requesting

18  that the contents of any communications in the account be preserved.  The preservation letter stated that

19  if Microsoft had any questions or data, it should call the then-assigned AUSA Drew Smith, or Eric Fox.

20  On December 6, 2010, Microsoft responded indicating it would preserve data pursuant to the statute for

21  ninety days.  The letter was addressed to the U.S. Attorney's Office, Attn: Eric Fox.  On January 18,

22  2011, the warrant was submitted to Judge Foley and issued and served on Microsoft the same day.

23          Counsel for Bickle indicated it was a mystery to the defense why the warrant was presented to

24  Judge Foley rather than the undersigned.  The court advised counsel that the local practice in this

25  district is for any applications for search warrants to be presented to the presiding duty judge and that

26  Judge Foley was on duty the week the warrant was issued.

27          Counsel for Bickle then addressed the affidavit supporting the search warrant and pointed out

28  that out of the forty-four paragraphs, three of them talk about the filtering of potentially privileged

materials.  In essence, the warrant required a filter agent to be assigned from ATF to review the materials and remove anything potentially privileged.  Any questions the filter agent had were to be directed to the U.S. Attorney.  If privileged materials were found, they were required to be placed in a sealed envelope for immediate return to Bickle or his attorney.  Defense counsel could then determine whether to assert a claim of privilege, and if there was a difference of opinion, the matter would be submitted *in camera* to a neutral third party, such as a magistrate judge.

On February 2, 2011, Eric Fox received a CD from Microsoft.[1]  The following day it was assigned an evidence identification label and marked as Exhibit 179.  The same day, Mr. Pokorny had a meeting set up with the U.S. Attorney's Office in Las Vegas with AUSAs Greg Damm and Phil Smith and ATF Agent Tom Chittam regarding discovery issues.  At the meeting, Mr. Pokorny was given a CD marked "Bickle email warrant."  The following day, he faxed a letter to Mr. Damm indicating he was unable to access materials on the CD.  Five days later, he received an email with a password to access the emails.  Two days later, he sent a letter to Mr. Damm expressing serious concern because attorney-client communications were on the CD.  Four days after that, Mr. Damm sent Mr. Pokorny a letter assuring him that no Sixth Amendment violations had occurred.

On February 17, 2011, the government filed a motion to unseal the search warrant and affidavit, and on February 22, 2011, Mr. Pokorny received the affidavit and warrant.

Mr. Pokorny and his assistant "spent a considerable amount of time" going through the contents of the CD.  They found that there were 1,441 emails from April 11, 2006, through February 1, 2011.  The email account was opened shortly before April 11, 2006.  Of the 1,441 emails, 231 emails were dated from November 3, 2010, the date of Bickle's arrest, through February 1, 2011, when Microsoft complied with the warrant.  Mr. Pokorny believes ninety emails on the CD are privileged.  All but five of the ninety emails are between Mr. Bickle and Mr. Pokorny.  The other five are between Mr. Bickle and Mr. Pokorny's research attorney, Crystal Walser, and between Mr. Bickle and a doctor he was

---

[1]The lawyers indicated the information from Microsoft was contained on a CD.  At the June 10, 2011, evidentiary hearing, Special Agent Fox clarified that he received an email from Microsoft containing a link to the information from Bickle's email account.  He then burned the information from the link onto a DVD because the amount of data was too large to put on a CD.

consulting with for mental health purposes.  The motion to suppress was filed March 9, 2011, after

counsel had an opportunity to review the contents of the CD provided by the government.  Mr. Pokorny

argued that the government's access to privileged communications was prejudicial and cited examples

of how his defense had been prejudiced.  One of the emails on the CD is dated January 27, 2011, and

contains Mr. Bickle's notes and impressions of various reports contained in discovery.  Emails dated

January 24 and 25, 2011, contain discussions between Bickle and Mr. Pokorny regarding possible plea

negotiations.  On January 18, 2011, there are memos between Mr. Bickle, Ms. Walser, and the defense

ATF consultant regarding discovery issues which are clearly work product.  There are December 30,

2010, and January 11, 2011, emails, with the mental health care professional involved in this matter.

There were also email exchanges between Mr. Bickle and his counsel on December 22, 2010, regarding

plea negotiations.

　　　　Counsel for Bickle argued that the government has run "roughshod" over Mr. Bickle's Sixth

Amendment rights and that the government must have understood that Bickle would be communicating

with his counsel by email because of the strict conditions imposed on his release which included

confinement to base and GPS monitoring.

　　　　Counsel for the government made representations to clarify the taint[2] procedure that the

government utilized in this case.  In summary, Mr. Damm represented that Microsoft was instructed to

send the response to the search warrant to the case agent to preserve the chain of custody.  The CD

received from Microsoft was received by the case agent, marked and placed in the ATF evidence vault

in Las Vegas where it remains.  Mr. Damm assured the court and opposing counsel that the case agent

had not reviewed the contents of the CD.  An Intelligence Research Specialist, Debra Martinez, with the

San Francisco field office of ATF in Dublin, California, was selected to serve as the taint agent.

Instructions to the taint agent were a "collaborative effort" between the assigned AUSAs and the case

agent, Eric Fox, who communicated these instructions to her.  The AUSAs also consulted with Mr.

Pokorny, counsel for Bickle, to identify whether anything on the CD provided by Microsoft contained

---

　　　　[2]The transcript of the hearing contains a typographical or transcription error.  Page 9, line 7
transcribes Mr. Damm as referring to a "tape" procedure rather than a "taint" procedure.

privileged information.  Mr. Pokorny provided the name of his assistant and the name of the physician that Mr. Bickle was consulting with.  These names were provided to the taint agent who prepared spreadsheets that were marked as Government's Exhibit "11" and provided to the court and opposing counsel.  The spreadsheets identify emails with the names of Mr. Pokorny, his assistant, or the physician.

Mr. Damm indicated that he understood that no one had reviewed the privileged communications and that the spreadsheets were prepared by the taint agent from header information identifying recipient and sender.  Mr. Damm took the position that the government complied with the filter procedure outlined in the warrant approved by Judge Foley by providing defense counsel with the entire CD containing not only privileged communications, but also all other emails in Bickle's Hotmail account.  Because all of the emails were on one disk, it was not possible to segregate the privileged from the non-privileged materials.  He characterized the search warrant filter protocol as one designed for the "paper world" rather than the "electronic world."  Counsel for the government represented that neither the case agent nor the filter agent opened or reviewed the content of any communications containing the three names that Mr. Pokorny provided.

Mr. Damm also explained that the warrant only sought email communications beginning March 2009, through the date of the application.  However, Microsoft sent a disk containing emails dating back to April 2006, and Mr. Damm indicated he had no idea how that happened.  However, he was also aware that an inquiry was made of Microsoft concerning whether it could perform any sort of segregation or filter process, and the government was told it would not.  Mr. Damm indicated the government was prepared to stipulate that it would not seek to use, use, or seek to admit any evidence on the disk prior to March 2009.

After hearing the government's representations, the court initially required the government to submit the affidavits of the case agent and the filter agent describing, with specificity, everything that had been done with the disk once it was provided to Special Agent Fox and the filter agent.  However, Mr. Pokorny indicated that Mr. Damm's representations were not contained in the government's response, and he was hearing a lot of factual information for the first time.  He requested an evidentiary hearing with an opportunity to examine the filter agent.  He also indicated that, in briefly reviewing the

11

1    spreadsheets marked as Government's Exhibit "1," they contained eighty-one communications;

2    however, he had identified ninety privileged communications on the disk.  The court granted his request

3    indicating a limited evidentiary hearing would be conducted to allow counsel to cross-examine on the

4    taint procedures, and to make sure that the government has not accessed privileged communications.

5    The court directed counsel to determine the availability of the case agent and filter agent and to

6    coordinate a mutually agreeable date and time with the court for the hearing on the earliest possible

7    date.

8    **III.    The June 13, 2011, Evidentiary Hearing.**

9          At the hearing conducted June 13, 2011, Special Agent Eric Fox, and the filter agent, Debra

10   Martinez, testified.  Special Agent Fox testified that on February 1, or February 2, 2011, he received an

11   email from Microsoft which attached a winzip file for Bickle's email account in response to the search

12   warrant.  He opened the file to see if it worked and made DVD copies of the contents of the winzip file

13   for government counsel, Mr. Pokorny, and the filter agent.  The original DVD was marked with an

14   exhibit sticker and placed in the ATF evidence vault to preserve chain of custody.  He discussed with

15   his supervisor who should be selected to serve as the filter agent, and the decision was made to put

16   someone who was disinterested in the investigation in the Bay area involved.  He has not seen the

17   content of any of the emails, and has not looked at any privileged emails.

18         On cross-examination, Special Agent Fox testified that winzip is a file extension that consists

19   basically of a digital filing cabinet.  It is compression software.  When the file was sent by Microsoft, a

20   password was needed to "unzip" the file.  The password was only good for a very short period of time.

21   He copied or "burned" the contents of the winzip file sent by Microsoft.  The original or first DVD was

22   placed in the ATF evidence vault to maintain chain of custody.  He indicated he believed Ms. Martinez

23   was a disinterested person because she works in California in the Bay area and was removed from the

24   investigation.  She had minimal or no knowledge of the case which is why ATF and government

25   counsel concluded she was an appropriate filter agent.  Additionally, she was selected because she is

26   known as a hard worker and reliable.  Fox set Martinez a copy of the warrant and filter process.

27   However, she was instructed not to begin until the government received a response from Mr. Pokorny

28   identifying individuals who had privileged communications with Bickle.

1    This was the first email search warrant Special Agent Fox had ever done.  The request for a
2    warrant was originally submitted to Judge Foley without a filter process.  Fox received a call from
3    AUSA Drew Smith indicating the judge would not approve the warrant without a filter process.  Special
4    Agent Fox does not know who drafted the three paragraphs outlining the filter process.  He did not.  He
5    had never used a filter agent before.  He believes that Ms. Martinez followed the process outlined in the
6    warrant, but acknowledged that privileged communications were not physically segregated from the
7    disk and provided to Mr. Pokorny.  Martinez was told she could not delete emails on the disk.  Ms.
8    Martinez was instructed that if she saw Mr. Pokorny's name, the name of his assistant, or the doctor,
9    that she should not open the email.  If Martinez had a question, she would contact Fox who would in
10   turn contact AUSA Damm or Phil Smith.  Fox would then relay their instructions to Martinez.  Fox
11   served as the point of contact because he was the case agent.

12   Fox testified that he expected a ream of paper from Microsoft rather than an electronic file.  He
13   has served search warrants on banks and other financial institutions who maintain records
14   electronically, but he has always received paper files in response.

15   Martinez has not separated anything or given anything to Fox.  Martinez did send an Excel
16   spreadsheet to him asking if the format was something he could work with.  He testified that he had not
17   seen anything else, and "it's kind of frustrating."  Martinez discussed the content of one email with him.
18   It was an October 31, 2008, email from Mr. Bickle's father to Bickle which contained a reference to
19   guns.

20   The court inquired whether anyone else at ATF had access to the winzip file.  Fox testified that
21   when he tried to open the link from Microsoft, he had a problem with his computer.  The link was not
22   working, and he needed technical advice because it seemed his network station was having a problem.
23   As a result, he forwarded the email to Special Agent Tyler Olsen to assist him in resolving the technical
24   problem.  No one else had access to the winzip file.

25   Debra Martinez testified that she has been employed by ATF as an Intelligence Research
26   Specialist for eight years.  She is not an agent, and her duties are to assist agents by analyzing data and
27   providing other forms of assistance.  In this case, she was contacted by Eric Fox and requested to
28   review Bickle's emails.  She was instructed not to look at any privileged documents.  She believed she

13

1   was first contacted March 3, 2011, and was sent a copy of the search warrant.  Special Agent Fox asked

2   her to review the procedures for the taint process.  Agent Fox told her that Mr. Pokorny was Bickle's

3   attorney and that she should not look at anything with his name on it.  Fox also told her he would get

4   back to her with other names.  She loaded the disk on the hard drive of her laptop because working on

5   the disk itself was hard and time-consuming.  She did not begin looking at the content of anything on

6   the disk for one or two weeks until after receiving names of those who had privileged communications

7   with Bickle.  She understood the government was waiting for Mr. Pokorny to provide those names.  She

8   implemented a procedure to segregate privileged from non-privileged emails on the disk.  She testified

9   it was a difficult process.  She placed emails with the names Pokorny, Walser or Dr. Johnson on a

10  spreadsheet.  She did not view the contents of any emails with their names.  Rather, she collected these

11  emails and placed them on her spreadsheet by looking at the header information.  She prepared a

12  PowerPoint presentation to demonstrate the step-by-step process she followed.  Copies of the eleven

13  slides used in her PowerPoint presentation were marked and admitted as government's Exhibit "2" at

14  the hearing.

15          On cross examination, she testified that she had a questions concerning whether she should look

16  at and print out the privileged emails like the search warrant says.  She received a response from AUSA

17  Damm who told her not to do so, to ensure that she did not go into any privileged documents.

18          When asked whether she had any prior involvement with Bickle's case, she testified "no, not

19  really."  She did recognize his name because, during the time of his arrest, an ATF command post was

20  set up.  She was not present during any of the arrests, but was in the Dublin command post available to

21  assist ATF agents in the field.  The procedure is for agents to call the command post when they have

22  made an arrest.  Agents may also request people at the command post to do computer research to assist

23  the investigation.  She has a Bachelor of Arts in Criminal Justice and is generally familiar with the

24  attorney-client privilege.  She testified that it consists of communications between the client and an

25  attorney for the benefit of the Defendant, and is important to ensure a fair trial.  She was designated as a

26  taint or filter agent on one prior occasion in 2010.  The other case involved both electronic and paper

27  files.  She is not sure what, if any, procedures ATF has to select a taint or filter agent.

28  / / /

1  She was not told about the temporal limitation of the search warrant until the date of the last

2  hearing in this case, May 13, 2011.  Although she received a copy of the application for the search

3  warrant, she only reviewed those portions pertaining to the filter procedures.  She sent an email to

4  Special Agent Fox about an email between Bickle and his father dated October 31, 2008, because she

5  thought it was significant because it discussed a "Russian 47."

6  On redirect, she reiterated that she filtered all attorney-client and doctor-client communications

7  by placing them on her spreadsheet from header information contained on the disk she received.  She

8  found one email from Bickle to his sister that had the same subject line as the subject line of one of the

9  emails between Mr. Bickle and Mr. Pokorny.  She asked for clarification and was told to treat it as

10  privileged.  She did not go into the email between Bickle and his sister and does not know its content.

11  It has taken her more than three months to get halfway through the filter process.  However, now that

12  she has been told to limit her review to emails beginning in March 2009, the time frame for completing

13  her work should drop dramatically.

14  **III.    Law and Analysis.**

15  The Fourth Amendment secures "the right of the people to be secure in their persons, houses,

16  papers, and effects against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Fourth

17  Amendment protects reasonable and legitimate expectations of privacy.  *Katz v. United States*, 389 U.S.

18  347 (1967).  The Fourth Amendment protects "people not places."  *Id*. Evidence obtained in violation

19  of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the

20  poisonous tree."  *Wong Sun v. United States*, 371 U.S. 471 (1963).

21  A person must have a reasonable expectation of privacy in the place searched to claim a

22  violation of his or her Fourth Amendment rights.  The Supreme Court has enunciated a two-part test to

23  determine whether an expectation of privacy is reasonable and legitimate.  *See Katz*, 389 U.S. at 361.

24  First, the individual must have an actual subjective expectation of privacy, and second, society must

25  recognize that expectation as objectively reasonable.  *Id*.  The government does not challenge Bickle's

26  assertion that he had a reasonable and legitimate expectation to privacy in the contents of his email

27  account.

28  / / /

1          **A.      Defendant's Request for *Franks* Hearing.**

2          In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court addressed at length whether a

3   false statement by a government affiant invalidates a search warrant.  *United States v. Hammett*, 236

4   F.3d 1054, 1058 (9th Cir. 2001).  In *Franks*, the Court held that a defendant could challenge a facially

5   valid affidavit by making a substantial preliminary showing that "(1) the affidavit contains intentionally

6   or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to

7   support a finding of probable cause."  *United States v. Lefkowitz*, 618 F.2d 1313, 1317 (9th Cir.), *cert.*

8   *denied*, 449 U.S. 824 (1980).  *See also United States v. Stanert*, 762 F.2d 775, 780 (9th Cir. 1985).

9   Pursuant to *Franks*, "[t]here must be allegations of deliberate falsehood or reckless disregard for the

10  truth, and these allegations must be accompanied by an offer of proof."  *Hammett*, 236 F.3d at 1058

11  (*quoting Franks*, 438 U.S. at 171). Where the defendant makes such a showing, the Fourth Amendment

12  requires that a hearing be held at a defendant's request.  *Franks*, 438 U.S. at 155-56; *Stanert*, 762 F.2d

13  at 780**.**

14          Bickle contends the affidavit in support of the search warrant is intentionally misleading and

15  contains statements without which probable cause would not exist to issue the search warrant.  Bickle

16  asserts that the affidavit wrongfully portrays Bickle as having sold guns to an undercover ATF agent

17  when it states, "at least three co-conspirators . . . and Bickle sold or otherwise distributed factory made

18  machine guns that have origins in Iraq, to an undercover ATF Task Force Officer."  Bickle asserts the

19  government has no information to believe Bickle ever sold guns to an ATF agent.  The affidavit also

20  misleads the court into inferring that Bickle tampered with witnesses through his email account when it

21  states the affiant "knows of other instances in which Bickle utilized polarbickle@hotmail.com to email

22  people who could potentially be witnesses. . . . Such emails could potentially be evidence of attempts to

23  obstruct justice."  The affidavit then refers to an email in which Bickle tells witness Matt Klier "some

24  guys have opted [for] lawyers and have ben [sic] left alone."  Further, Bickle contends information

25  concerning payments to Mr. Klier were misrepresented as possible payments for guns, when the

26  government was aware, based upon Mr. Klier's affidavit, that payments made by Bickle were for repair

27  work to Bickle's motorcycle.  He also asserts that paragraph 27 of the warrant wrongfully suggests

28  Bickle used his email and text messages to sell guns to Jason Cole.

1    The court finds Bickle has not met his burden of establishing that the affidavit contains

2    deliberate falsehoods or statements made with reckless disregard for the truth. Although Bickle has

3    specifically challenged certain portions of the warrant, he has not established the statements he

4    challenges were false or misleading.  A fair reading of the affidavit does not suggest the government

5    claimed Bickle sold guns directly to an undercover ATF officer.  Rather, the affidavit clearly articulates

6    the government's theory of the case that Bickle was involved in a conspiracy with at least three co-

7    conspirators to sell or distribute factory-made guns that had origins in Iraq to an undercover ATF Task

8    Force Officer and other civilians.  Nor is the affidavit misleading about the government's belief that

9    Bickle was communicating with potential witnesses to persuade them not to cooperate with the

10   government.  The affidavit relates the content of certain messages and relates them to other events

11   supporting the government's conclusion that they were sent in an effort to persuade potential witnesses

12   not to cooperate.  Reasonable minds may differ concerning whether the emails referred to in the

13   affidavit were innocent or inculpatory.  However, this does not make statements concerning these

14   communications false or misleading.

15       Finally, the affidavit is not misleading concerning the $800 payment to Klier.  The affidavit

16   relates that Klier told an ATF agent that the $800 wire transfer was for a motorcycle part transaction.

17   Fox explained this was significant to him because on October 10, 2010, one day after an undercover

18   ATF officer paid $8,000 to purchase guns from co-conspirator Richard Paul, Paul and Bickle

19   communicated by emails.  Bickle instructed Paul that, if asked about the $8,000.00 wire transfer by

20   officials, he should explain it as payment for a motorcycle.  Accordingly, Bickle's request for a *Franks*

21   hearing is denied.

22       **B.    Scope of Warrant: Overbreadth and Particularity.**

23       The warrant clause of the Fourth Amendment categorically prohibits the issuance of any warrant

24   except one particularly describing the place to be searched and the persons or things to be seized.

25   *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).  The purpose of the particularity requirement is to

26   prevent general searches.  *Id*.  By limiting the authorization to search the specific areas and things for

27   which there is probable cause to search, the particularity requirement ensures that the search will be

28   / / /

17

1  carefully tailored to its justifications, and will not become a wide-ranging, exploratory search the Fourth
2  Amendment prohibits.  *Id.*

3      "[T]he scope of a lawful search is 'defined by the object of the search.'"  *United States v.*
4  *Ewain*, 88 F.3d 689, 692 (9th Cir. 1996) (*quoting Maryland v. Garrison*, 480 U.S. 79, 84 (1987)).  The
5  test is an objective one: "would a reasonable officer have interpreted the warrant to permit the search at
6  issue."  *United States v. Gorman*, 104 F.3d 272, 274 (9th Cir. 1996).  *See also United States v. Leon*,
7  468 U.S. 897, 918-19 (1984); *United States v. Traylor*, 656 F.2d 1326, 1331 (9th Cir. 1981).  Search
8  warrants must be specific.  *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006).  "Specificity has
9  two aspects: particularity and breadth.  Particularity is the requirement that the warrant must clearly
10  state what is sought.  Breadth deals with the requirement that the scope of the warrant be limited by the
11  probable cause on which the warrant is based."  *Id.* (*citing United States v. Towne*, 997 F.2d 537, 544
12  (9th Cir. 1993)).

13      The warrant's description of items need only be "reasonably specific, rather than elaborately
14  detailed."  *Id. (citing United States v. Storage Spaces Designated Nos. 8 & 49,* 777 F.2d 1363, 1368
15  (9th Cir. 1985), *cert. denied,* 479 U.S. 1086 (1987) (internal citation omitted)); *see also United States v.*
16  *Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986) (the level of detail necessary in a warrant is related to the
17  particular circumstances and the nature of the evidence sought).  "Warrants which describe generic
18  categories of items are not necessarily invalid if a more precise description of the items subject to
19  seizure is not possible."  *Id.*  The level of specificity required "varies depending on the circumstances of
20  the case and the type of items involved."  *Id.*

21      In determining whether a warrant is sufficiently particular, the Ninth Circuit considers one or
22  more of the following factors: (1) whether probable cause exists to seize all items of a particular type
23  described in the warrant; (2) whether the warrant sets out objective standards by which the executing
24  officers can differentiate items subject to seizure from those which are not; and (3) whether the
25  government was able to describe the items more particularly in light of the information available to it at
26  the time the warrant was issued.  *Id.*

27      Here, the warrant directed Microsoft to **disclose** to the government the following information:
28      (a)      The contents of all emails stored in the account, including copies of emails sent to and

18

1   from the account, draft emails, the source and destination addresses associated with each

2   email, the date and time at which each email was sent, and the size and length of each

3   email;

4       (b)    All records or other information regarding the identification of the account, to include

5   full name, physical address, telephone numbers and other identifiers, records of session

6   times and durations, the date on which the account was created, the length of service, the

7   types of service utilized, the IP address used to register the account, log-in IP addresses

8   associated with session times and dates, account status, alternative email addresses

9   provided during registration, methods of connecting, log files, and means and source of

10  payment (including any credit or bank account number);

11      (c)    All records or other information stored by an individual using the account, including

12  address books, contact and buddy lists, calendar data, pictures, and files;

13      (d)    All records pertaining to communications between Microsoft Corporation and any

14  person regarding the account, including contacts with support services and records of

15  action taken.

16  Exhibit A to Motion to Suppress at 18:4-21.

17      Although AUSA Damm argued at the May 13, 2011, hearing he had "no idea" why Microsoft

18  provided electronically stored information dating back to 2006 when the account was opened, a plain

19  reading of the warrant indicates this is what the government applied for and what Judge Foley

20  authorized to be disclosed.  There was no temporal limitation imposed in the warrant regarding what

21  Microsoft was obligated to disclose.  Rather, the temporal limitation of March 1, 2009, to the present

22  (date of execution of the warrant) was imposed for that which the government was authorized to **seize.**

23      Particularity is not the problem with the warrant in this case.  The warrant called for Microsoft

24  to disclose all records and information in Microsoft's possession associated with

25  polarbickle@hotmail.com.   It is not ambiguous concerning what was sought.  Rather, the question is

26  whether the warrant is overbroad in authorizing Microsoft to disclose all account information and

27  content while temporally and subject matter limiting what the government what the government was

28  ///

19

authorized to seize.[3]  The purpose of the Fourth Amendment's particularity requirement is to make general searches impossible and prevent "exploratory rummaging in a person's belongings."  *See United States v. Rodriguez*, 869 F.2d 479, 486 (9th Cir. 1989) (*citing Andresen v. Maryland,* 427 U.S. 463, 480 (1976)).  The need to prevent general exploratory rummaging of a person's belongings is particularly acute in document searches because, unlike requests for other tangibles, document searches tend to involve broad disclosures of the intimacies of private lives, thoughts, and transactions.  *United States v. Washington*, 797 F.2d 1461, 1468 (9th Cir. 1986) (internal citations and quotations omitted).  However, the Ninth Circuit has often recognized a legitimate law enforcement need to scoop up large quantities of data and sift through it carefully for concealed or disguised pieces of evidence.  *See*, *e.g.*, *United States v. Hill*, 459 F.3d 966 (9th Cir. 2006).

Mr. Pokorny has had his copy of the DVD containing the content of what Microsoft forwarded since February 1 or 2, 2011, and he does not claim that the DVD he received contains anything other than emails.  The court has no information concerning whether Microsoft disclosed all of the account information required by the warrant.  This report of findings and recommendation will therefore not address issues not raised in the papers, in oral argument, or at the evidentiary hearing.

### C.   18 U.S.C. § 2703.

As a preliminary matter, the affidavit supporting the application for a search warrant in this case sought authorization for the contents of Bickle's email account pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A).  18 U.S.C. § 2703(a) governs obtaining the contents of wire or electronic communications in electronic storage.  It permits a government entity to require a provider of electronic services to disclose the contents of a wire or electronic communication that is in electronic storage in an electronic communication system for 180 days or less pursuant to a warrant issued in compliance with the Federal Rules of Civil Procedure.  18 U.S.C. § 2703(a).  It also authorizes a government entity to require a provider of electronic communication services to disclose the contents of wire or electronic communications that have been in electronic storage in an electronic communication

---

[3]Neither counsel for Bickle, nor the government, provided the court with a copy of the search warrant return or addressed whether Microsoft provided anything than the 1,441 emails sent electronically to Special Agent Fox which he "burned" on DVDs.

system for more than 180 days following the procedures outlined in subsection (b). *Id*. Section 2703(b)(1)(A) authorizes a government entity to require a provider of remote computing services to disclose the contents of any wire or electronic communication without notice to the subscriber or customer if the government obtains a warrant issued pursuant to the Federal Rules of Criminal Procedure.   Section 2703(c)(1)(A) authorizes a government entity to require a provider of electronic communication service or remote computing service to disclose records or other information pertaining to a subscriber or customer if the government obtains a warrant issued pursuant to the Federal Rules of Criminal Procedure.

18 U.S.C. § 2703(f)(1) requires a provider of wire or electronic communication services or a remote computing service to take necessary steps to preserve records and other evidence in its possession pending issuance of a court order or other process upon the request of a government entity. The provider is required to retain the records referred to in 2703(f)(1) for a period of ninety days.  In this case, it is undisputed that the government sent a preservation letter to Microsoft in December 2010, requesting that the contents of any communications in Bickle's Hotmail account be preserved. Microsoft responded in a letter dated December 6, 2010, that it would preserve data pursuant to the statute for ninety days.  After the government sent the preservation letter, and Microsoft agreed to comply, Special Agent Fox applied for the warrant at issue in this case.  The warrant was served on Microsoft, which gathered the information and forwarded it to Special Agent Fox in an email a password-protected internet link.  A law enforcement officer is not required to be present during the service or execution of a search warrant issued in accordance with § 2703.  18 U.S.C. § 2703(g).

During oral argument at the May 13, 2011 hearing, counsel for Bickle acknowledged that the presence of a law enforcement officer was not required for service or execution of the search warrant and conceded that the government had met the statutory "minimum requirements."  However, counsel for Bickle argued that the government should not have directed that Microsoft comply with the warrant by sending the content information to the case agent and/or the prosecutors involved in this case. Rather, he maintained the information could have, and should have, been forwarded directly to the filter agent.  Government counsel explained that the case agent was designated to receive the response to the warrant because of the necessity for maintaining chain of custody.

21

1    Counsel for Bickle was not aware, until the government made its representations at the May 13,

2    2011 hearing, what procedures were followed to ensure that government counsel and the case agents or

3    investigating officers did not have access to the information Microsoft provided before it was filtered

4    and segregated to exclude privileged communications.  Because the government did not dispute that

5    there were privileged communications in the emails Microsoft provided, the court granted counsel for

6    Bickle's request for an evidentiary hearing to cross-examine the case agent and filter agent to fully

7    develop the record about what actually occurred.

8    After hearing their testimony on direct, and being afforded an opportunity to cross examine

9    Special Agent Fox and Ms. Martinez, Mr. Pokorny stated he had no reason to doubt their integrity.

10   However, he emphasized that the government did not follow the taint procedure mandated in the

11   warrant, and DVD copies of the contents of Bickle's account which contain privileged materials have

12   been in the possession of the prosecutors and the case agent since Microsoft complied with the warrant.

13   Because of the number of privileged communications on the DVDs counsel for Bickle argued the filter

14   procedures the government implemented were inadequate, and that the court should suppress everything

15   contained on the DVDs.

16   The court finds that both Special Agent Fox and Ms. Martinez were credible in their testimony.

17   Specifically, the court believes Special Agent Fox's testimony that he has not opened or read the

18   contents of any of the emails contained in the link he received from Microsoft.  The court accepts his

19   testimony that he copied the contents of the materials received from Microsoft on DVDs making one

20   copy, which was marked with an Exhibit sticker and placed in the ATF vault to preserve the chain of

21   custody, and also made a copy for the prosecutors, a copy for Mr. Pokorny, and a copy for the filter

22   agent.  The court finds Ms. Martinez credible concerning the procedures she implemented to segregate

23   privileged emails from non-privileged emails on the disk.  Specifically, the court found her credible that

24   she placed all emails with the names Pokorny, Walser, or Dr. Johnson on a spreadsheet and did not

25   review the contents of any emails with their names.  Rather, she collected these emails and identified

26   them on her spreadsheet by looking at header information identifying who sent or received them.

27   The filter procedures directed by Judge Foley were intended to restrict how the seized contents

28   of Bickle's email account were to be handled.  The purpose of these procedures was to ensure that

1  privileged communications between Bickle and his counsel would not fall into the hands of government

2  prosecutors or investigating agents.  As indicated, the court has found that neither Special Agent Fox

3  nor Ms. Martinez have reviewed the contents of any privileged communications.  However, it is

4  undisputed that Ms. Martinez did not comply with the filter procedure outlined in paragraph 41 of the

5  application for the warrant.  That paragraph provided that if any privileged materials were found they

6  would be placed in a sealed envelope for immediate return to Bickle or his attorney.  AUSA Damm

7  explained that this procedure was not literally followed because the filter procedure was designed for a

8  paper response rather than an electronic response to the warrant.  Special Agent Fox testified that this

9  was his first email search warrant and that he expected a paper response from Microsoft.  The court

10  found him credible in this regard.

11      Ms. Martinez read paragraph 41 and was aware that it required her to place any privileged

12  communications in a sealed envelope for return to Bickle and/or his counsel.  She sought direction from

13  AUSA Damm through Special Agent Fox and was directed not to print out the electronic files because

14  she would have to open them to do so.

15      During the May 13, 2011, hearing, AUSA Damm reasoned that having Martinez open the

16  electronic records to print a hard copy would create a bigger risk of government access to the contents

17  of the privileged communications than recording the privileged communications on a spreadsheet

18  without opening or accessing the content.  He also concluded that because Mr. Pokorny had identified

19  all individuals who would have been involved in privileged communications with Bickle, and because

20  Pokorny had a DVD copy of everything Microsoft sent, that this provided superior segregation or

21  filtering than the procedure outlined in the warrant.

22      Faced with this dilemma, the government should have applied to the court for an amendment to

23  the filtering procedures the warrant mandated.  The government was not at liberty to substitute another

24  procedure for the one the court directed.  However, the court agrees that having a government agent

25  open privileged communications to print them out and return them in a sealed envelope to defense

26  counsel would give the filter agent more access to the privileged communications than she has had.

27  Additionally, the court agrees that because the purpose of the filter procedures was to prevent

28  government access to privileged communications, and because defense counsel had the DVD

containing everything Microsoft provided, and was asked to identify all individuals having privileged

communications with Bickle, that it made little sense to print and return paper copies of electronic

records defense counsel already had.  Nevertheless, the government applied for judicial authorization to

obtain the contents of the email account, received judicial direction concerning how privileged

materials should be handled, and should have sought judicial authorization for an amendment to the

procedures Judge Foley directed when compliance became problematic.  Having received judicial

authorization and direction, the government was not at liberty to ignore the court's direction or

substitute its own plan for what Judge Foley mandated.  However, for reasons discussed below, the

court finds that suppression of everything the warrant authorized the government to seize is not the

appropriate remedy for the government's failure to comply with the filter procedure outlined in

paragraph 41 of the application for the warrant.

During the May 13, 2011, hearing, government counsel conceded that any emails predating

March 1, 2009, were outside the scope of what the warrant authorized the government to seize, and

partial suppression of emails predating March 1, 2009, was the appropriate remedy.  The court agrees

that partial suppression of the contents of Bickle's email account dated earlier than March 1, 2009,

should be ordered.  The court will also recommend that the government should not be permitted  use,

for any purpose, emails dated prior to March 1, 2009.

The warrant authorized the government to **seize** all information disclosed by Microsoft that

constitutes fruits, evidence, and instrumentalities of violation of 18 U.S.C. §§ 2, 371, 842(a)(3)(A),

922(o) and 26 U.S.C. §§ 5861(d), 5861(e), 5861(j), 5861(k) (together, the "Subject Offenses")

involving Bickle or other known or unknown members of the conspiracy since March 1, 2009,

including for each account or identifier, information pertaining to the following matters:

> (a)     Records relating to who created, used, or communicated with the account or identifier,
>          including records about their identities and whereabouts;
>
> (b)     Communications and records that may establish ownership and control (or the degree
>          thereof) of the email accounts to be searched, including address books, contact or buddy
>          lists, bills, invoices, receipts, registration records, bills, correspondence, notes, records,
>          memoranda, telephone/address books, photographs, video recordings, audio recordings,

1      lists of names, records of payment for access to newsgroups or other online subscription

2      services, and attachments to emails, including documents, pictures, and files,

3      (c)    Communications and records regarding communications between the email account user

4             and the provider's support services including complaints from or about other users,

5             technical problems or billing inquiries;

6      (d)    Communications and records that may be related to the Subject Offenses;

7      (e)    Communications and records regarding financial transactions that may reflect the

8             transfer of proceeds of the Subject Offenses;

9      (f)    Communications and records that may show persons, corporations or other artificial

10            entities that may be holding proceeds of the Subject Offenses;

11     (g)    Communications and records that may show co-conspirators of the Subject Offenses and

12            their roles;

13     (h)    Records regarding chat forum discussions that may pertain to the Subject Offenses;

14     (I)    Communications and records that evidence other email accounts that may relate to the

15            Subject Offenses;

16     (j)    Communications and records that may show motivation for engaging in the Subject

17            Offenses; and

18     (k)    Communications and records regarding the Subject Offenses.

19            Neither the government nor Bickle has cited any case deciding a Fourth Amendment challenge

20     to a warrant for electronically stored information served on an internet service provider on particularity

21     or breadth grounds.  The court's research found only two published decsions–both of which upheld

22     searches for all emails in a user's account.  *See, e.g., United States v. Bowen,* 689 F.Supp.2d 675, 682

23     (S.D.N.Y. 2010) (stating the Fourth Amendment does not require the executing officers to delegate a

24     pre-screening function to the internet service provider to ascertain which emails are relevant before

25     copies are obtained from the internet service provider for subsequent searching) (*citing United States v.*

26     *Vilar,* 2007 WL 1075041 at *35 (S.D.N.Y. Apr. 4, 2007) (recognizing that "it is frequently the case

27     with computers that the normal sequence of search and then selective seizure is turned on its head")

28     (internal citation and quotation marks omitted)); *United States v. McDarrah,* 2006 WL 1997638

1    (S.D.N.Y. 2006) (upholding warrant for search of all email and stored content against an

2    overbreadth/particularity challenge).

3        However, there is a well-developed body of Fourth Amendment law addressing the search and

4    seizure of large quantities of materials to review and sort the material for items within the scope of

5    probable cause underlying the warrant.  For example, in *Andreson v. Maryland*, 427 U.S. 463, 482 n.11

6    (1976), the Supreme Court recognized that, "[i]n searches for papers, it is certain that some innocuous

7    documents will be examined, at least cursorily, in order to determine whether they are, in fact, among

8    those papers authorized to be seized."  Because computers typically contain so much information

9    outside the scope of the criminal investigation, computer searches raise difficult Fourth Amendment

10    issues not encountered in searches of paper files.  *United States v. Adjani*, 452F.3d 1140 (9th Cir. 2006)

11    (holding district court properly admitted evidence of child pornography on defendant's computer

12    storage media notwithstanding the lack of a sufficiently detailed supporting affidavit describing the

13    need for wholesale seizure of such media).

14        The Ninth Circuit has recently and exhaustively addressed search warrants for computer and

15    electronically stored information in a series of decisions involving grand jury investigations into illegal

16    steroid use by major league baseball players.  Three published decisions culminated in an *en banc*

17    decision in *United States v. Comprehensive Drug Testing, Inc.,* 621 F.3d 1162 (9th Cir. 2010) ("CDT

18    III").  There, the Ninth Circuit recognized that data that individuals used to keep in file cabinets in

19    physical facilities are now usually stored electronically, and law enforcement faces many challenges in

20    retrieving electronically stored information.  *Id*. at 1175.  "Electronic storage facilities intermingle data,

21    making them difficult to retrieve without a thorough understanding of the filing and classification

22    systems used–something that can often only be determined by closely analyzing the data in a controlled

23    environment."  Because of these challenges, the Ninth Circuit recognized law enforcement's legitimate

24    need to seize large quantities of data is an inherent part of the electronic search process.  *Id*. at 1177.

25    However, the legitimate need of law enforcement for authorization to examine large quantities of

26    electronic records "creates a serious risk that every warrant for electronic information will become, in

27    effect, a general warrant, rendering the Fourth Amendment irrelevant."  *Id*. at 1176.

28    / / /

1    To address these competing concerns, CDT III updated its earlier decision in *United States v.*

2  *Tamura*, 694 F.2d 591 (9th Cir. 1982) "to apply to the daunting realities of electronic searches." *Id*. at

3  1177. *Tamura* preceded the dawn of the information age and involved the seizure of several boxes and

4  dozens of file drawers of paper documents to be sorted out for documents the search warrant authorized

5  later. CDT III made it clear that the procedural safeguards outlined in the *Tamura* opinion have

6  "provided a workable framework for almost three decades" and should be applied to the realities of

7  electronic searches. Specifically, the Court of Appeals reiterated that wholesale seizure of voluminous

8  documents to be sorted out for documents a search warrant authorizes the government to seize may

9  sometimes be necessary. Although often necessary, the Ninth Circuit continues to disapprove of the

10 wholesale seizure of documents, particularly where the government fails to return materials that were

11 not the object of the search once they have been segregated. *Id*. However, there is no reason to

12 suppress properly-seized materials just because the government took more than authorized by the

13 warrant. *Id*. If records are so intermingled that they cannot feasibly be sorted on site, the government

14 should seal and hold the documents pending approval by a magistrate judge of a further search

15 following the procedures set forth in the American Law Institute's *Model Code of Pre-Arraignment*

16 *Procedure*. *Id*. If the need for transporting large quantities of information is anticipated, the

17 government should apply for specific authorization for large-scale removal of material, which should be

18 granted by the magistrate judge issuing the warrant only where on-site sorting is not feasible, and no

19 other practical alternatives exist.

20    In the case of electronically stored information, CDT III called upon judges issuing search

21 warrants to apply *Tamura* procedures to electronically stored information "to maintain the privacy of

22 materials that are intermingled with seizable materials, and to avoid turning a limited search for

23 particular information into a general search of office file systems and computer databases." *Id*. at 1170.

24 Because of the unique problems inherent in the electronic search process, judicial officers should

25 exercise greater vigilance "in striking the right balance between the government's interests in law

26 enforcement and the right of individuals to be free from unreasonable search and seizures." *Id*. at 1177.

27 The court concluded "the process of segregating electronic data that is seizable from that which is not

28 / / /

27

1    must not become a vehicle for the government to gain access to data which it has no probable cause to

2    collect."

3         Here, the warrant authorized Microsoft to disclose *all* emails in Bickle's account and account

4    information, including address books, contact and buddy lists, calendar data, pictures, and files, or

5    evidence of the enumerated crimes without regard to whether they were written during the time frame

6    Bickle is alleged to have engaged in the conspiracy.  At the evidentiary hearing, AUSA Damm

7    represented that Microsoft would not perform any sort of segregation or filter process.  Although AUSA

8    Damm stated that he was unsure why Microsoft sent the contents of Bickle's email account, it is clear

9    that Microsoft was merely complying with the language of the warrant which directed disclosure of the

10   contents of all emails stored in the account as well as all account information.  The court agrees with

11   the decision in *Bowen* that the Fourth Amendment does not require delegation of a pre-screening

12   function to an internet service provider to determine which emails are authorized to be seized before the

13   information is obtained by law enforcement for search and seizure of content the warrant authorized.

14   Although the warrant authorized the government to search the entire contents of Bickle's email account,

15   the government was only permitted to seize items related to the offenses enumerated in the warrant.

16   Moreover, a filter process was mandated by Judge Foley to sort or filter privileged emails from non-

17   privileged emails.

18        The testimony at the June 10, 2011, hearing clearly established that the filter agent did not read

19   the entire warrant.  She only familiarized herself with the three paragraphs about the filter process, and

20   as a result, she was unaware that the warrant contained any temporal or subject matter limitations until

21   the May 13, 2011 hearing.  However, the filtering protocol only dealt with filtering attorney-client and

22   work product privileged emails and did not direct the filter agent to screen and segregate email by

23   subject matter.  The Ninth Circuit has explicitly permitted the use of a filter agent, unassociated with

24   the prosecution, to screen potentially confidential material.  *See United States v. Danielson,* 325 F.3d

25   1054, 1071-72 (9th Cir. 2003).  The purpose of the filter procedure the warrant directed has been

26   accomplished.  The filter agent has not opened or read the content of any emails with the names of

27   individuals who had potentially privileged communications with Bickle–nor have government

28   prosecutors or case agents.  Counsel for Bickle was asked to identify persons having privileged

28

1  communications with Bickle and did so before the filter agent began her review.  Government
2  prosecutors and the case agents have not accessed the content of anything on the DVDs copied from the
3  material Microsoft provided.  The warrant did not require the filter agent to segregate non privileged
4  emails or account information by date or subject matter.

5      Although the warrant authorized the government's filter agent to search all non-privileged
6  emails, it only authorized the government to seize certain communications and records from March 1,
7  2009, forward related to the enumerated offenses and communications and records relating to who
8  created, used, or controlled the email account.  Bickle is alleged to have smuggled guns into the country
9  during this time, and the court finds that what the warrant authorized the government to seize is not
10  overbroad as to time.  Similarly, the content of emails the government was authorized to seize is also
11  limited by subject matter.

12      The government concedes it may not use anything Microsoft provided dated prior to March 1,
13  2009, and that it may not access any of the privileged communications Bickle had with his attorney, his
14  attorney's assistant, or the doctor he consulted for defense purposes.  The government does not
15  challenge the privileged nature of any of these communications which have been identified by the filter
16  agent from header information and placed on a spreadsheet.

17      The court does not find the warrant overly broad in its authorization to obtain account
18  information.  The Ninth Circuit has repeatedly upheld warrants authorizing the seizure of items which
19  establish the identity of persons in control of premises.  "It is axiomatic that if a warrant sufficiently
20  describes the premises to be searched, this will justify a search of the personal effects therein belonging
21  to the person occupying the premises if those effects might contain the items described in the warrant."
22  *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1994).  The Ninth Circuit has long upheld
23  warrants "authorizing the seizure of items which establish the identity of persons in control of the
24  premises."  *United States v. Whitten*, 706 F.2d 1000 (9th Cir. 1983); (*citing United States v. Marques*,
25  600 F.2d 742, 751 at n. 5 (9th Cir. 1979), *cert. denied*, 444 U.S. 1019 (1980)).

26      Similarly, seizing information regarding identification of the account, including name, physical
27  address, telephone numbers and other identifiers, records of session times and durations, the date on
28  which the account was created, the length of service, the types of service utilized, the IP address used to

29

1   register the account, log-in IP addresses associated with session times and dates, account status,

2   alternative email addresses provided during registration, methods of connecting, log files, and means

3   and source of payment (including any credit or bank account number) all tends to establish whether the

4   Hotmail account is indeed Bickle's, and whether he was using or accessing the account to commit the

5   enumerated offenses.

6          The warrant also authorized Microsoft to disclose: (a) information about the account holder of

7   polarbickle@hotmail.com; and (b) all records or other information stored by an individual using the

8   account, including address books, contact and buddy lists, calendar data, pictures, and files.  It

9   essentially seeks all information in the account concerning Bickle's associations, not just those related

10  to co-conspirators or others involved in the enumerated offenses.  The Ninth Circuit has held that "[a]

11  warrant to seize evidence of association between a suspect and any other person is patently overbroad."

12   *United States v. Washington,* 797 F.2d 1461, 1473 (9th Cir. 1986).  However, because of the way this

13  category of information is electronically stored, there is no way to limit disclosure of this information to

14  people with whom Bickle corresponded since March 2009.  The warrant limited the government to

15  seize Bickle's for individuals with whom he has communicated since March 1, 2009, that are related to

16  the enumerated offenses.  As such, the warrant is not overly broad in authorizing the seizure of this

17  category of information.  *See, e.g., United States v. Rodriguez,* 869 F.2d 479, 487 (9th Cir. 1989)

18  (permitting seizure of evidence of association where the evidence was related to the alleged criminal

19  activity).

20          **C.     Good Faith Exception.**

21          When considering the validity of a search warrant, the court may inquire whether the good faith

22  exception applies before determining whether probable cause existed to issue the warrant, or vice versa.

23  *See, e.g., United States v. Huggins,* 299 F.3d 1039, 1047 (9th Cir. 2002) (*citing United States v.*

24  *Cancelmo,* 64 F.3d 804, 807 (2d Cir. 1995) (stating "[a]pplication of the good faith exception is

25  particularly appropriate [where] the legal question of whether probable cause existed is a close one,

26  while the objective reasonableness of the officers' reliance on the warrant is more straightforward)

27  (internal citation omitted).  In *United States v. Leon,* the Supreme Court carved out an exception to the

28  exclusionary rule for a search conducted in good faith reliance upon an objectively reasonable search

30

1   warrant. *United States v. Leon,* 468 U.S. 897 (1984).  The good faith exception does not apply if: the

2   issuing judge was mislead by information in the affidavit that was knowingly or recklessly false; the

3   issuing judge abandoned his or her detached and neutral judicial role; the affidavit was so lacking in

4   probable cause that no reasonable law enforcement officer could believe it was valid; the warrant was

5   so facially deficient in failing to particularize the place to be searched or the things to be seized that

6   executing officers could not reasonably presume it to be valid. *Id.*  The Supreme Court has also held

7   that the good faith exception does not apply when police recklessly maintain or knowingly enter false

8   information into a warrant database to enable future arrests.  *Herring v United States*, 129 S. Ct 695.

9   703 (2009).

10          Bickle does not claim that the issuing judge abandoned his detached and neutral judicial role, or

11   that the warrant was so lacking in probable cause to render official belief in its existence unreasonable,

12   or that police recklessly maintained or entered false information into a database.  The court has found

13   that the warrant met the particularity requirement and was not overbroad in what it authorized the

14   government to seize, and that Bickle has not met his burden of establishing the affidavit contains any

15   knowingly or recklessly false or misleading statements.  Thus, even if the affidavit failed to establish

16   probable cause for everything the government received judicial authorization to seize, suppression is

17   not required.

18          The exclusionary rule is a judicially-created remedy for Fourth Amendment violations, and

19   where police conduct is pursued in good faith, the rule's deterrent function loses much of its force.

20   *United States v. SDI Future Health, Inc.,* 568 F.3d 684, 706 (9th Cir. 2009) (*citing United States v.*

21   *Luong,* 470 F.3d 898, 902 (9th Cir. 2006).  The exclusionary rule's sole purpose is to deter future

22   Fourth Amendment violations.  *Davis v. U.S.,* – U.S. – , 2011 WL 236958 at *5 (June 16, 2011).

23   Suppression is not an automatic consequence of a Fourth Amendment violation.  *Herring v. United*

24   *States*, 129 S.Ct. 695, 698 (2009); *see also Illinois v. Gates,* 462 U.S. at 223.  Indeed, a long line of

25   Supreme Court cases establish that exclusion has always been the Court's last resort, not its first

26   impulse.  *Herring*, 129 S.Ct. at 700 (*citing Hudson v. Michigan*, 547 U.S. 586, 591 (2006)).

27          Instead, the determination whether suppression is warranted "turns on the culpability of the

28   police and the potential of exclusion to deter wrongful police conduct." *Id.*  The extent to which the

exclusionary rule is justified by deterrence principles varies with the culpability of the law enforcement conduct. *Herring,* 129 S.Ct. 701. "Evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* (*citing Illinois v. Krull,* 480 U.S. 340, 348-49 (1987)) (internal citation omitted). Generally, "the abuses that gave rise to the exclusionary rule featured intentional conduct that was patently unconstitutional." *Herring,* 129 S.Ct. at 702. To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid to the justice system. *Id.* The exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct. *Id.* Accordingly, when police mistakes are the result of negligence rather than systematic error or reckless disregard of constitutional requirements, any marginal deterrence does not "pay its way." *Id.* In the now famous words of Justice Cardozo, the criminal should not "go free because the constable has blundered." *Id.* at 704 (*citing Leon,* 468 U.S. at 907-08; *People v. Defore,* 242 N.Y. 13, 21 (1926), respectively); *see also Davis,* 2011 WL 2369583 at *6 (when the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs). Isolated, nonrecurring police negligence lacks the culpability required to justify the harsh sanction of exclusion. *Id.* at *7.

Additionally, the benefits of deterrence must outweigh the costs. *See Leon*, 468 U.S. at 910; *Pennsylvania Bd. of Probation and Parole v. Scott,* 524 U.S. 357, 368 (1998) (stating "to the extent that application of the exclusionary rule could possibly provide some incremental deterrent, that possible benefit must be weighed against [its] substantial social costs"). In *Scott*, the Supreme Court commented that the exclusionary rule's "costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application." *Id.* at 364-65.

Bickle's reply brief does not address the government's good faith arguments. Rather, he argues that the affidavit supporting the warrant did not state probable cause for everything the government was authorized to seize and therefore overbroad and that the affidavit contains false or misleading statements. He also argues suppression of everything the government received is required because the government did not follow the filter procedures the issuing judge directed.

1    The warrant contained no temporal or subject matter limitation on what it authorized Microsoft

2    to disclose.  However, it did limit what the government was authorized to seize by date and subject

3    matter.  The Ninth Circuit has recognized the difficulties that searches of computers and electronically-

4    stored information present.  The Ninth Circuit has also acknowledged that law enforcement's legitimate

5    need to seize large quantities of data is an inherent part of the electronic search process.  Finally, the

6    Ninth Circuit continues to hold that there is no reason to suppress properly-seized materials because the

7    government took more than was authorized by the warrant.  As the Ninth Circuit reiterated in *CDT III*,

8    judges issuing search warrants should apply the *Tamura* framework to the "daunting realities of

9    electronic searches."  621 F.3d at 1177.  Wholesale seizures of voluminous documents to be sorted for

10   documents a search warrant authorizes the government to search may sometimes be necessary.

11   However, the government's failure to return materials that were not the object of the search warrant

12   once they have been segregated is disapproved.

13        The court found Special Agent Fox credible that he had not previously applied for a search

14   warrant for email account information and that he expected to receive paper copies of Bickle's emails.

15   He received an email with a link to an electronic file instead.  As AUSA Damm correctly pointed out,

16   the three paragraphs of the warrant containing the filer procedures were designed for the "paper world"

17   rather than the "electronic world."  When Microsoft submitted its response to the search warrant in

18   electronic format, the government recognized it could not literally comply with the filter procedures the

19   warrant detailed.  The government could have and should have applied to the court for judicial

20   authorization for a modified filter procedure appropriate to the electronic format in which it received

21   the information.  However, the government's failure to obtain judicial authorization to modify the

22   approved filter procedure is, at most, negligent. In light of the measures taken to ensure that no one read

23   the contents of Bickle's privileged communications, it was not the type of intentional misconduct that

24   was patently unconstitutional.  Additionally, on the record before the court, the government's failure to

25   literally comply with a filter procedure to segregate privileged materials that were expected in paper

26   rather than electronic format is not the type of error likely to deter future police misconduct.  The

27   government conduct in this case does not constitute the type of deliberate, reckless, or grossly negligent

28   disregard of the Fourth Amendment that justifies the harsh sanction of exclusion.  Partial suppression of

33

1    all information received from Microsoft dated prior to March 1, 2009, and all of the unread privileged

2    materials is an adequate remedy.

3         To accomplish the Ninth Circuit's direction in CDT III disapproving of wholesale seizure of

4    records, particularly where the government fails to return materials that do not fall within the scope of

5    what the government was authorized to seize, the court will direct that the filter agent print hard copies

6    of emails dated on or after March 1, 2009, and provide them to the case agent who shall review the

7    documents to seize emails falling within the scope of the warrant, *i.e.* what the government was

8    authorized to seize.  The case agent shall segregate those emails falling within the scope of the warrant

9    from those which are not, and he shall return emails the warrant did not authorize the government to

10   seize to counsel for Bickle.  The case agent shall provide counsel for the government only with those

11   emails the search warrant authorized the government to seize.

12        The court will permit ATF to keep a single copy of the DVD that was marked with an evidence

13   sticker and placed in the ATF evidence vault for chain of custody purposes.  However, the court will

14   require that government counsel place its copy of the DVD in a sealed envelope and deposit it with the

15   clerk of the court, under seal.  The court will also direct that Ms. Martinez provide her copy of the DVD

16   in a sealed envelope and deposit it with the clerk of the court under seal, after printing hard copies of

17   the contents of the DVD dated on or after March 1, 2009.  In completing her filter review of the

18   contents of the DVD,  Ms. Martinez shall not open or access any of the emails identified on the

19   spreadsheet containing the names of Mr. Pokorny, Ms. Walser, or Dr. Johnson.  Finally, although the

20   court will permit ATF to keep the DVD copy marked with an evidence sticker, the court will order that

21   ATF may not open or access the DVD without further judicial authorization.  The government must

22   apply to the court for authorization to access the contents of the DVD for forensic evaluation, chain of

23   custody, or any other purpose.

24        Having reviewed and considered the matter, and for the reasons stated,

25        **IT IS ORDERED** that:

26   1.   The ATF filter agent shall print copies of all emails on the DVD provided to her dated

27        March 1, 2009, or after, **except for the privileged emails identified and placed on her**

28        **spreadsheet containing the names Pokorny, Walser and Dr. Johnson.**  She shall

34

provide hard copies of the non-privileged emails dated March 1, 2009, or after, to Special Agent Fox who shall review them to segregate emails falling within the scope of the warrant, *i.e.,* what was authorized to be seized.

2.    After segregating non-privileged emails dated on or after March 1, 2009, which the search warrant authorized the government to seize, from those falling outside the scope of the warrant, Special Agent Fox shall return hard copies of emails falling outside the scope of the warrant to Mr. Pokorny.  The government shall not keep a copy of materials on the DVD falling outside the scope of the warrant that the court has required the government to return to counsel for Bickle.

3.    Special Agent Fox may only provide government counsel with non-privileged emails dated on or after March 1, 2009, falling within the scope of the warrant.

4.    Counsel for Bickle may apply to the court for return of any additional materials if he reasonably believes Special Agent Fox did not return hard copies of all emails falling outside the scope of the warrant.

5.    ATF may keep a single copy of the DVD that was marked with an evidence sticker and placed in the ATF vault for chain of custody purposes.  However, the government shall not open or access the contents of the DVD without further judicial authorization.

6.    Government counsel shall place its copy of the DVD in a sealed envelope and deposit it with the clerk of the court under seal.

7.    The filter agent shall provide her copy of the DVD in a sealed envelope and deposit it with the clerk of the court under seal after she has printed hard copies as directed in this order.

**IT IS RECOMMENDED** that The Motion to Suppress be **GRANTED IN PART** and **DENIED IN PART** as follows:

1.    The Motion to Suppress should be **GRANTED** to the extent that the following evidence should  suppressed:

(a)    Any information or emails sent, received, drafted or stored in polarbickle@hotmail.com before March 1, 2009; and

35

(b)     Any emails from polarbickle@hotmail.com identified by the filter agent from header information containing the names Pokorny, Walser, or Dr. Johnson.

2.     The Motion to Suppress should be **DENIED** in all other respects.

Dated this 21st day of June, 2011.


PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

36