# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:10-cr-00565-GMN-PAL-1 |
| vs. | ) | |
| | ) | **ORDER DENYING MOTION FOR** |
| NICHOLAS BICKLE, | ) | **SENTENCE REDUCTION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pending before the Court is the Renewed Motion for Sentence Reduction ("RMSR"), (ECF No. 370), filed by Defendant Nicholas Bickle.  The Government filed a Response,[1] (ECF No. 374), to which Defendant filed a Reply,[2] (ECF No. 381).

Also pending before the Court is Defendant's Motion for Extension of Time to File a Reply, (ECF No. 380).

For the reasons discussed below, the Court **DENIES** Defendant's Renewed Motion for Sentence Reduction because he has not met his burden of showing extraordinary and compelling reasons warranting a reduction and the 18 U.S.C. § 3553(a) factors do not favor a

---

[1] The Government also filed Defendant's confidential medical records under seal along with its Response, (ECF No. 375), but did not file a motion for leave to file these records under seal in violation of this Court's Local Rules. *See* D. Nev. LR IA 10-5 (explaining that unless otherwise permitted, "papers filed with the court under seal must be accompanied by a motion for leave to file those documents under seal").  Nevertheless, because the records contain Defendant's confidential and highly personal medical information, the Court finds that there is a compelling interest in maintaining the confidentiality of these records and *sua sponte* ORDERS they be maintained under seal. *See United States v. Smith*, No. 17-cr-0207, 2021 WL 75253, at *2 n.3 (W.D. Wash. Jan. 8, 2021) (ordering that the defendant's confidential medical records be *sua sponte* maintained under seal despite)

[2] Defendant's Reply also included his confidential medical records but Defendant did not file a motion to seal these records.  For the same reason identified above, the Court *sua sponte* ORDERS Defendant's medical records be sealed.

reduction and **DENIES as moot** his Motion for Extension of Time to File a Reply because the Court granted him an extension of time in a previous order.[3]

## I.    BACKGROUND

In 2011, a jury found Defendant guilty of Counts 1, 2, and 5–15 of the Third Superseding Indictment: (1) Conspiracy to Unlawfully Receive, Transport, Possess and Transfer Machineguns and Stolen Firearms, and to Deal in Firearms in violation of 18 U.S.C. § 922(a), (j) & (k) and 26 U.S.C. §§ 5861(d), (j), and (k), in violation of 18 U.S.C. § 371; (2) Dealing in Firearms Without a License; Aiding and Abetting, in violation of 18 U.S.C. §§ 922(a)(1)(A) and (2); (5)–(8) Unlawful Possession and Transfer of Machineguns; Aiding and Abetting, in violation of 18 U.S.C. §§ 922(o) and 2; (9)–(13) Unlawful Possession, Concealment, Sale and Disposition of Stolen Firearms; Aiding and Abetting, in violation of 18 U.S.C. §§ 922(j) and 2; (14) Receiving, Concealing and Retaining Property of the United States Government, in violation of 18 U.S.C. § 641; and (15) Transportation by, and Distribution of Explosives, to a Non-Licensee, in violation of 18 U.S.C. § 842(a)(3). (Mins. Proceedings, ECF No. 191); (J., ECF No. 264).  The Court sentenced Defendant to 60-months custody each for Counts 1 and 2, to run concurrently; 120-months custody each for Counts 5–14, to run concurrently; and 90-months custody for Count 15, to run consecutively to the preceding counts, for a total of 210-months custody. (J.).

Defendant filed a Motion for Sentence Reduction, (ECF No. 352), which the Court denied without prejudice because Defendant failed to demonstrate extraordinary and compelling reasons warranting a reduction. (Order Denying MSR, ECF No. 361).  The Court advised Defendant that "he [was] not precluded from filing another motion for [sentence

---

[3] Specifically, Defendant requested his deadline to file a Reply be extended until December 5, 2023.  However, the Court already granted Defendant an extension until December 6, 2023, to file his Reply. (Min. Order, ECF No. 379).

reduction] before this Court." (Order 2:24–25, ECF No. 367).  Defendant then filed the instant Renewed Motion for Sentence Reduction, (ECF No. 370).

## II.   LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), a court may, in certain circumstances, grant a defendant's motion to modify his or her term of imprisonment.  Before filing such a motion, the defendant must first petition the Bureau of Prisons ("BOP") for compassionate release. *Id.*  A court may grant the defendant's motion for a modification in sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or after thirty (30) days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C.] section 3553(a)" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*  As the movant, the defendant bears the burden to establish that he is eligible for compassionate release. *See United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022) (explaining that it is the defendant's burden to establish his eligibility for compassionate release).

The Sentencing Commission has recently issued guidelines regarding when "extraordinary and compelling reasons" exist for compassionate release. U.S.S.G. § 1B1.13(b). The Guidelines note several relevant circumstances, including (1) the medical circumstances of the defendant; (2) the advanced age of the defendant resulting in "a serious deterioration in physical or mental health;" (3) "[t]he death or incapacitation of the caregiver of the defendant's minor child;" (4) whether the defendant, while in custody, was the victim of sexual or physical abuse; and (5) "other circumstance or combination of circumstances that, when considered by

themselves or together with any of the reasons described above warrant compassionate release

*Id.*

### III.   <u>DISCUSSION</u>

The Government does not dispute that Defendant has exhausted his administrative remedies. (*See generally* Resp., ECF No. 374).  Accordingly, the Court turns to whether Defendant has shown extraordinary and compelling reasons warranting a sentence reduction.

Defendant argues that a sentence reduction is warranted for three reasons: (1) the BOP has failed to monitor and adequately treat his bradycardia condition; (2) the BOP improperly revoked his First Step Act ("FSA") earned time credits; and (3) the sentencing judge erred by denying him the benefit of a downward departure on the basis of diminished capacity pursuant to United States Sentencing Guideline ("U.S.S.G.") § 5K2.13. (*See generally* RMSR).  The Court examines each reason in turn, beginning with Defendant's argument that the BOP has failed to treat his bradycardia condition.

#### A. Bradycardia Condition

Defendant argues a sentence reduction is warranted because the BOP is unable or unwilling to monitor and treat his potentially fatal "extreme bradycardia" condition.[4]  (RMSR at 2–3).  In response, the Government disputes Defendant's characterization of his bradycardia as "extreme," and his argument that the BOP has failed to adequately monitor and treat his condition.[5] (Resp. 11:1–13:2).

---

[4] Bradycardia is an abnormally slow heartrate that can become severe if the heart is unable to "pump enough oxygen-rich blood to the body." Bradycardia, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/bradycardia/symptoms-causes/syc-20355474, *archived at* https://perma.cc/8S4N-D8A8.  The hearts of adults at rest usually beat between 60 to 100 times a minute. *Id.*  An individual with bradycardia has a heartbeat that is slower than 60 beats a minute. *Id.*

[5] The Government alternatively argues that Defendant waived and forfeited any argument surrounding his bradycardia condition because he could have raised this claim in his first Motion for Sentence Reduction. (Resp. 9:10–10:21).  The Court disagrees.  In denying Defendant's first Motion for Sentence Reduction, the Court declined to address Defendant's bradycardia condition because he raised this argument for the first time in his Reply. (Order 3:21–23).  Thus, Defendant's argument, while procedurally improper, was raised.  And because Defendant is proceeding *pro se*, the Court is disinclined to categorically preclude him from raising this condition

U.S.S.G. 1B1.13(b)(1)(C) provides that extraordinary and compelling reasons exist warranting compassionate release when "[t]he defendant is suffering from a medical condition that require long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." Here, the Court finds Defendant's bradycardia condition does not present extraordinary and compelling reasons warranting a sentence reduction because his treatment records do not demonstrate he is at a serious risk of deterioration of health or death.

Defendant's medical records reflect that his bradycardia was categorized as "extreme" in April and May 2016. (EKG Tests at 1, Ex. A to Reply, ECF No. 381-1); (Clinical Records at 13–14, Ex. B to Reply, ECF No. 381-2). After this, however, his medical records stop referring to his condition as extreme, instead stating Defendant has "sinus bradycardia" or just "bradycardia." (EKG Tests 3, Ex. A to Reply); (Clnical Records at 37, Ex. B to Reply); (Transfer Medical Notes at 1–2, Ex. D to Reply, ECF No. 381-4). The omission of extreme throughout his medical records undermines Defendant's contention regarding the severity of his condition.

Moreover, this is not a case where the BOP has failed to monitor Defendant's condition. Defendant has received multiple EKG reports on his heartrate in the past three years. (*See* Medical Records, Ex. 1 to Resp., ECF No. 374-1) (showing that Defendant received EKG reports in September 2021 and February and June 2022). And Defendant recently saw medical staff in August 2022 and March 2023. (Clinical Encounters at 1–2, Ex. F to Reply, ECF No. 381-6). While Defendant disputes the quality of care he is receiving, the record before the Court does not demonstrate the BOP has abdicated monitoring his condition such that he is at

---

on a procedural technicality, especially when the Court advised Defendant it would consider his bradycardia condition if he filed a renewed motion for sentence reduction addressing this claim. (*Id.* 3:23–25).

risk of serious deterioration in health or death.[6] *See, e.g.*, *United States v. Robinson*, No. 21-1865-CR, 2022 WL 2204126, at \*2–3 (2d Cir. June 21, 2022) (defendant's heart murmur and bradycardia—in particular where the record did not show these conditions were being improperly treated—did not constitute extraordinary and compelling reasons warranting relief); *see also United States v. Sanchez*, No. 1:95-cr-05038, 2021 WL 2808702, at \*9 (E.D. Cal. July 6, 2021) (finding that defendant's morbid obesity and bradycardia were not extraordinary and compelling reasons to reduce sentence when they were being tracked and monitored).  In sum, the Court disagrees with Defendant that his bradycardia presents extraordinary and compelling reasons warranting a sentence reduction.

### B. FSA Earned Time Credits

Defendant also seeks a reduction in sentence based on his FSA earned time credit. Specifically, Defendant claims that the BOP improperly denied him earned time credits he accrued, and that if these credits were applied to his sentence, he would already be eligible for home confinement. (RMSR at 3–4).

Defendant's argument challenges the "manner, location, or conditions of [his] sentence's execution." 28 U.S.C. § 2241.  A "defendant may . . . challenge BOP's calculation [of his sentence]—in other words, the execution of his sentence—by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241." *Zavala v. Ives*, 785 F.3d 367, 370 n.3 (9th Cir. 2015). Thus, Defendant's argument regarding earned time credits is better suited to a § 2241 petition. *See, e.g.*, *United States v. Ortiz*, No. 12-cr-62, 2023 WL 1781565, at \*5–6 n.3 (W.D. Wash. Feb. 6, 2023) (noting that defendant's argument regarding earned time credits was "likely better

---

[6] The Court recognizes Defendant's discontent with the adequacy of treatment he is receiving but advises him that generally, inadequate medical care does not make an individual eligible for compassionate release. *United States v. Miller*, No. 15-cr-00471, 2021 WL 2711728, at \*4 (N.D. Cal. July 1, 2021).  Instead, where an institution fails to provide adequate medical care, as Defendant alleges, the proper avenue for relief is bringing a civil claim as set forth by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976).

suited to a . . . § 2241 petition"); *see also United States v. Samal*, No. 18-cr-0214, 2023 WL 2579887, at *6 (W.D. Wash. Mar. 16, 2023) (same).

Even if the Court were to consider Defendant's challenge to the BOP's calculation of his FSA earned time credits as a basis for sentence reduction, district courts within the Ninth Circuit have found that a "failure or denial of the BOP to calculate time credits does not constitute an extraordinary or compelling reason justifying [a reduction]." *United States v. Capetillo-Davila*, No. 19-cr-00178, 2023 WL 2599612, at *4 (D. Haw. Mar. 22, 2023); *see United States v. Penitani*, No. 12-cr-00514, 2022 WL 4132900, at *4 (D. Haw. Sept. 12, 2022) ("Penitani does not show an extraordinary and compelling reason justifying compassionate release in claiming that the BOP has failed to consider him for low security status or to calculate his earned time credits."). Accordingly, the Court DENIES Defendant's request for a reduction based on his FSA earned time credit.

**C. Sentencing Error Under U.S.S.G. § 5K2.13**

Defendant next argues the sentencing judge erred by denying him the benefit of a downward departure on the basis of diminished capacity pursuant to U.S.S.G. § 5K2.13 because of his PTSD. (RMSR at 4–6). A motion for compassionate release, however, "is not an appropriate vehicle for a collateral attack against a defendant's sentence." *United States v. Carlos-Tofolla*, No. 1:17-cr-00343, 2023 WL 3484163, at *2 (D. Idaho May 16, 2023).

Multiple circuits have held that a collateral attack cognizable under § 2255 cannot properly be framed as a motion for compassionate release under § 3582(c)(1). *See, e.g.*, *United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022) ("Because § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements"); *United States v. Escajeda*, 58 F.4th 184, 187–88 (5th Cir. 2023) ("[A] prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence . . . . Because [the

Defendant]'s claims would have been cognizable under § 2255, they are not cognizable under § 3582(c)"); *United States v. McCall*, 56 F.4th 1048, 1058 (6th Cir. 2022) ("[H]abeas is the appropriate place to bring challenges to the lawfulness of a sentence. And as we've discussed, we do not read 'extraordinary and compelling' to provide an end run around habeas.").

Here, the sentencing judge considered whether Defendant was entitled to a downward departure under § 5k2.13 because of his PTSD and found he did not. (*See* Sentencing Tr. 9:5–13:6, 15:21–18:18, 23:23–27:8, 43:1–47:2); (*see also* Presentence Report ("PSR") ¶ 86) (discussing Defendant's PTSD. Although this Court may address sentencing disparities across defendants and changes to sentencing law in its sentence reduction inquiry, a compassionate release motion is not meant to provide movants an "opportunity to relitigate their sentencings." *United States v. Henry*, No. 05-cr-147, 2022 WL 2905057, at *2 (D. Md. July 22, 2022); *see also United States v. Garcia*, No. 21-1181-CR, 2022 WL 2154675, at *2 n.1 (2d Cir. June 15, 2022) ("A defendant may not use a compassionate release motion to second-guess the sentence previously imposed") (cleaned up). And here, Defendant's argument looks backward to an issue that was already litigated at his sentencing. That issue, which is more appropriately brought in a § 2255 motion, is not an extraordinary or compelling reason for reduction now.

### D. 18 U.S.C. § 3553(a) Factors

Even if Defendant had shown extraordinary and compelling reasons warranting a sentence reduction, the Court would still deny his Motion because the § 3553(a) factors weigh against a reduction. These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any

victims. *See* 18 U.S.C. § 3553(a)(1)–(7).  Here, the Court focuses primarily on an evaluation of the nature and circumstances of the offense, public safety, the need for the sentence imposed, and the kinds of sentences available.  The Court begins by examining the nature and circumstances of Defendant's offense and public safety concerns.

Defendant's PSR explained that the "overarching damages, real and potential," of Defendant's conduct "are enormous [because] [t]he Defendant acted so as to arm other individuals with some of the most dangerous and deadly firearms manufactured." (PSR ¶ 128).  Similarly, the sentencing judge observed that Defendant's conduct "created the potential to arm others with very, very dangerous firearms for money" and constituted a "very serious" offense. (Sentencing Tr. 40:4–8, 46:7–8).  The Court agrees with the PSR and sentencing judge's characterization of Defendant's conduct because his indiscriminate sale of firearms created a public safety risk, and at worst, could have resulted in the loss of innocent lives. *See United States v. Banda*, No. 1:23-cr-00106, 2023 WL 5596442, at *2 (E.D. Cal. Aug. 29, 2023) (noting that firearm trafficking is a serious offense).  The Court cannot ignore that Defendant willingly and knowingly jeopardized the general public's safety to "enrich [himself.]" (PSR ¶ 128).

The Court next turns to the need for the sentence imposed and the kind of sentences available.  Defendant's total offense level and criminal history category resulted in a guideline range for imprisonment of 188 to 235 months. (PSR ¶ 113).  Defendant ultimately received a mid-range sentence of 210 months. (J., ECF No. 264).  Thus, the sentencing judge exercised his discretion to give Defendant a less severe sentence than permitted.  Considering the seriousness of Defendant's conduct, granting Defendant a reduction when accounting for his mid-range sentence would neither promote respect for the law nor afford adequate deterrence to criminal

///

///

///

conduct.[7] *See United States v. Purry*, No. 2:14-cr-00332, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020).

In sum, the Court concludes that, given the nature and seriousness of the offense, a sentence reduction "would not serve the need for the sentence to reflect the seriousness of the offense, [] promote respect for the law, [] provide just punishment for the offense, [or] afford adequate deterrence to criminal conduct . . . ." *United States v. Silva*, No. 4:17-CR-554, 2020 WL 4039218, at *3 (N.D. Cal. July 17, 2020).

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Sentence Reduction, (ECF No. 370), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Extension of Time to File a Reply, (ECF No. 380), is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Defendant's medical records filed along with the Government's Response, (ECF No. 375), be **maintained under seal**, and the medical records included in Defendant's Reply, (ECF No. 381), be **sealed**.

The Clerk of Court is instructed to mail a copy of this Order to Defendant's address listed on the docket.

**DATED** this __1__ day of December, 2023.

_____

Gloria M. Navarro, District Judge
United States District Court

---

[7] Moreover, Defendant attempted to escape from prison in 2017, bolstering the need for the sentence imposed. (MSR at 18–21, ECF No. 352). Although the Court considers Defendant's explanation that his attempted escape was due to his PTSD, the Court cannot ignore his potential dangerousness, especially when considering the lack of remorse for his actions.